**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Larry Francis WILKS, Defendant–
Appellant.**

**No. 94–5208.**

United States Court of Appeals,
Tenth Circuit.

July 6, 1995.

Submitted on the briefs: *

David Pierce, John Thomas Kennedy, Muskogee, OK, for defendant-appellant.

Stephen C. Lewis, U.S. Atty., Allen J. Litchfield, Asst. U.S. Atty., Tulsa, OK, for plaintiff-appellee.

---

* After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case therefore is ordered submitted without oral argument.

Before ANDERSON and BALDOCK, Circuit Judges, and BROWN, District Judge.**

BALDOCK, Circuit Judge.

Defendant Larry Francis Wilks appeals his conviction for illegal possession or transfer of machineguns, 18 U.S.C. § 922(*o*), and illegal transfer of a firearm, 26 U.S.C. § 5861(e). We have jurisdiction pursuant to 28 U.S.C. § 1291.

The facts are not disputed. Defendant transferred two silencers and sold three machineguns to undercover Bureau of Alcohol, Tobacco, and Firearms ("BATF") agents while operating a gun shop in Tulsa, Oklahoma. BATF agents also discovered two machineguns in Defendant's possession during a search of Defendant's home. Defendant was arrested and charged with three counts of illegal transfer of a machinegun, 18 U.S.C. § 922(*o*); one count of illegal possession of a machinegun; *id.;* and one count of illegal transfer of a firearm, 26 U.S.C. § 5861(e).[1]

Prior to trial, Defendant filed a motion to dismiss the indictment as to the machinegun counts, claiming § 922(*o*) was unconstitutional. The district court denied the motion. Defendant then entered conditional pleas of guilty to four counts of illegal possession and transfer of machineguns, 18 U.S.C. § 922(*o*), and one count of illegal transfer of a firearm, 26 U.S.C. § 5861(e). The district court sentenced Defendant to thirty-four months imprisonment. This appeal followed.

## I.

Defendant first contends the district court erred in failing to grant his motion to dismiss the indictment because § 922(*o*) asserts no nexus with interstate commerce, and is thus beyond the constitutional power granted to Congress to regulate commerce.[2] We review challenges to the constitutionality

of a statute de novo. *Johnston v. Cigna Corp.,* 14 F.3d 486, 489 (10th Cir.1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 1792, 131 L.Ed.2d 720 (1995).

Congress passed § 922(*o*) as part of the Firearms Owners' Protection Act of 1986 ("FOPA"), Pub.L. No. 99–308, 100 Stat. 449 (1986), which amended the Gun Control Act of 1968 ("GCA"), 18 U.S.C. §§ 921–28. Section 922(*o*) states:

(1) Except as provided in paragraph (2), it shall be unlawful for any person to transfer or possess a machinegun.

(2) This subsection does not apply with respect to—

(A) a transfer to or by, or possession by or under the authority of, the United States or any department or agency thereof or a State, or a department, agency or political subdivision thereof; or

(B) any lawful transfer or lawful possession of a machinegun that was lawfully possessed before the date this subsection takes effect.

The legislative history surrounding § 922(*o*) is virtually nonexistent. The provision was a last minute floor amendment, no hearings were conducted, and no committee report refers to it. *See* David T. Hardy, *The Firearms Owners' Protection Act: A Historical and Legal Perspective,* 17 Cumb.L.Rev. 585, 670–71 (1987). The scant legislative history merely contains a discussion of an earlier bill proposed in the House of Representatives which "prohibited the transfer and possession of machine guns, used by racketeers and drug traffickers for intimidation, murder and protection of drugs and the proceeds of crime." H.R.Rep. No. 495, 99th Cong., 2d Sess. 4 (1986), *reprinted in* 1986 U.S.C.C.A.N. 1327, 1330. "The only apparent explanation for it is the statement of its sponsor, Representative Hughes, that 'I do not know why anyone would object to the banning of machine guns.'" *Lopez,* 2 F.3d at

---

** The Honorable Wesley E. Brown, Senior United States District Judge for the District of Kansas, sitting by designation.

**1.** The government dismissed four other counts following Defendant's guilty plea.

**2.** Defendant does not raise a Second Amendment challenge to § 922(*o*) and therefore we do not consider it. However, "this orphan of the Bill of Rights may be something of a brooding omnipresence here." *United States v. Lopez,* 2 F.3d 1342, 1364 n. 46 (5th Cir.1993), *aff'd,* —— U.S. ——, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995).

1356 (citing *Farmer v. Higgins,* 907 F.2d 1041, 1044 (11th Cir.1990), *cert. denied,* 498 U.S. 1047, 111 S.Ct. 753, 112 L.Ed.2d 773 (1991) (quoting 132 Cong.Rec. H1750 (1986)) (statement of Rep. Hughes)).

In *United States v. Hale,* 978 F.2d 1016 (8th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1614, 123 L.Ed.2d 174 (1993), the Eighth Circuit upheld § 922(*o* ) as a proper exercise of Congress' Commerce Clause power, noting that the legislative history of FOPA indicated that "Congress considered the relationship between the availability of machine guns, violent crime, and narcotics trafficking." *Id.* at 1018 (citing H.R.Rep. No. 495, 99th Cong., 2d Sess. 1–5, *reprinted in* 1986 U.S.C.C.A.N. 1327, 1327–31). Additionally, the court noted that Congress found that there was a nexus between the regulation of firearms and the commerce power when it first enacted § 922 in 1968. *Id.* (citing Omnibus Crime Control and Safe Streets Act of 1968, Pub.L. No. 90–351, 82 Stat. 197, 225 (1968) ("Omnibus Act")). Because the 1986 amendments adding subsection (*o* ) did not alter these findings, the court concluded § 922(*o* ) was a proper exercise of Congress' Commerce Clause power. *Id.; see also United States v. Pearson,* 8 F.3d 631, 633 (8th Cir.1993) (reaffirming *Hale*), *cert. denied,* —— U.S. ——, 114 S.Ct. 2132, 128 L.Ed.2d 863 (1994).[3]

*Hale* was decided prior to the Supreme Court's recent decision in *United States v. Lopez,* —— U.S. ——, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). In *Lopez,* the defendant carried a concealed handgun onto the campus of a San Antonio, Texas high school. Following his arrest, Defendant was charged with and convicted of a violation of the Gun–Free School Zones Act of 1990 which prohibits the mere possession of a firearm "at a place that the individual knows, or has reasonable cause to believe, is a school zone." 18 U.S.C. § 922(q)(2)(A). On appeal, the defendant challenged his conviction contending that Congress exceeded its authority under the Commerce Clause when it enacted § 922(q).

In examining whether § 922(q) violated the Commerce Clause, the Court first enumerated three categories of activity which Congress could regulate under the Commerce Clause: (1) the channels of interstate commerce; (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities"; and (3) activities which have "a substantial relation to interstate commerce ... *i.e.,* those activities that substantially affect interstate commerce." *Id.* at —— – ——, 115 S.Ct. at 1629–30.

Within this framework, the Court first determined § 922(q) was not a regulation of the channels of interstate commerce nor was it a regulation of an instrumentality of interstate commerce or persons or things in interstate commerce. *Id.* at ——, 115 S.Ct. at 1629. Thus, the Court examined § 922(q) under category three to determine whether it was a regulation of an activity that substantially affected interstate commerce. The Court held it was not. Specifically, the Court determined that § 922(q) "by its terms has nothing to do with 'commerce' or any sort of economic enterprise, however broadly one might define those terms." *Id.* at —— – ——, 115 S.Ct. at 1630–31. Thus, the Court held that "[t]he possession of a gun in a local school zone is in no sense an economic activity that might, through repetition elsewhere, substantially affect any sort of interstate commerce." *Id.* at ——, 115 S.Ct. at 1634. The Court further determined that § 922(q) contained no jurisdictional element "which might limit its reach to a discrete set of firearm possessions that additionally have an explicit connection with or effect on interstate commerce." *Id.* at ——, 115 S.Ct. at 1631. Thus, because § 922(q) did not regulate a commercial activity substantially affecting interstate commerce or contain a requirement that the possession be connected in any way to interstate commerce, the Court held § 922(q) was unconstitutional under the Commerce Clause.

**3.** We note that in *United States v. Evans,* 928 F.2d 858, 862 (9th Cir.1991), the Ninth Circuit also ruled that § 922(*o*) does not violate the Commerce Clause based upon reasoning recently discredited by the Supreme Court in *United States v. Lopez,* —— U.S. ——, ——, 115 S.Ct. 1624, 1632, 131 L.Ed.2d 626 (1995). Therefore, we do not consider it.

*Lopez* does not dictate a similar result in the instant case. Unlike § 922(q), § 922(*o*) embodies a proper exercise of Congress' power to regulate "things in interstate commerce"—*i.e.*, machineguns. *Lopez,* —— U.S. at —— – ——, 115 S.Ct. at 1629–30; *see, e.g., United States v. Atkinson,* 513 F.2d 38, 39–40 (4th Cir.1975) (holding Congress could regulate narcotics including intrastate narcotics possession to effectively regulate the interstate trafficking in narcotics); *United States v. Evans,* 712 F.Supp. 1435, 1442 (D.Mont.1989) ("It is beyond dispute the commerce power vests Congress with the authority to regulate the interstate transportation of products, including firearms."). Whereas § 922(q) sought to regulate an activity which by its nature was purely intrastate and could not substantially affect commerce even when incidents of those activities were aggregated together, *see id.* at ——, 115 S.Ct. at 1631, § 922(*o*) regulates machineguns, which by their nature are "a commodity ... transferred across state lines for profit by business entities." *United States v. Hunter,* 843 F.Supp. 235, 249 (E.D.Mich. 1994). The interstate flow of machineguns "not only has a substantial effect on interstate commerce; it *is* interstate commerce." *Id.* Section § 922(*o*) regulates this "extensive, intricate, and definitively *national* market for machineguns", *id.* (emphasis added), by prohibiting the transfer and possession of machineguns manufactured after May 19, 1986. As such, § 922(*o*) represents Congressional regulation of an item bound up with interstate attributes and thus differs in substantial respect from legislation concerning possession of a firearm within a purely local school zone. *See Lopez,* 2 F.3d at 1356 (Section 922(*o*)'s restriction to machineguns "is more suggestive of a nexus to or affect on interstate or foreign commerce than possession of any firearms whatever, no matter

when or where originated, within one thousand feet of the grounds of any school.").

The legislative history of Congressional firearms regulation supports this view.[4] As noted in *Hale,* when Congress originally enacted § 922 under the Omnibus Act, it regulated the interstate flow of firearms under the commerce power based upon express findings that "only through adequate Federal control over *interstate* and foreign commerce in these weapons, and over all persons engaging in the businesses of importing, manufacturing, or dealing in them, can ... effective State and local regulation of this traffic be made possible." Pub.L. No. 90–351, § 901(a)(3), 82 Stat. 197 (1968) (emphasis added).

In 1968, Congress replaced the Omnibus Act with the GCA. Like the Omnibus Act, the GCA "restricted public access to firearms, and channeled commerce in firearms 'through federally licensed ... dealers in an attempt to halt mail-order and interstate consumer traffic in these weapons.'" *United States v. Marchant,* 55 F.3d 509, 513 (10th Cir.1995) (quoting *Huddleston v. United States,* 415 U.S. 814, 824, 94 S.Ct. 1262, 1269, 39 L.Ed.2d 782 (1974)). The legislative history of the GCA reflects this approach:

### PURPOSE

The principal purpose of H.R. 17735, as amended, is to strengthen Federal controls over *interstate* and foreign commerce in firearms and to assist the States effectively to regulate firearms traffic within their borders.

. . . .

### GENERAL STATEMENT

The increasing rate of crime and lawlessness and the growing use of firearms in

---

**4.** We are mindful that in *Lopez* the Supreme Court refused to examine previous Congressional findings surrounding prior federal firearms legislation in determining whether § 922(q) violated the Commerce Clause because § 922(q) "represent[ed] a sharp break with the long-standing pattern of federal firearms legislation." *Lopez,* —— U.S. at ——, 115 S.Ct. at 1632.

In contrast to § 922(q), we do not view § 922(*o*) as constituting a "sharp break" with

previous firearms legislation which regulated the interstate flow of firearms. Rather, § 922(*o*) is consistent with this earlier federal legislation because it merely regulates the movement of a particular firearm in interstate commerce. We therefore believe it is entirely appropriate to examine prior enactments and legislation in determining the constitutionality of § 922(*o*).

violent crime clearly attest to a need to strengthen Federal regulation of *interstate firearms traffic.*

The subject legislation responds to widespread national concern that existing Federal control over the sale and shipment of firearms [across] State lines is grossly inadequate.

Handguns, rifles, and shotguns have been the chosen means to execute three-quarters of a million people in the United State since 1900. The use of firearms in violent crimes continues to increase today.

. . . .

The committee is persuaded that the proposed legislation imposes much needed restrictions on *interstate* firearms traffic and, at the same time, does not interfere with legitimate recreational and self-protection uses of firearms by law-abiding citizens. The committee urges its enactment.

H.R.Rep. No. 1577, 90th Cong., 2d Sess., *reprinted in* 1968 U.S.C.C.A.N. 4410, 4411–15 (emphasis added).

As the court in *Hale* noted, Congress did not alter these findings when it enacted § 922(*o* ) under FOPA. Rather, Congress specifically noted that one of the aims of FOPA was "to strengthen the Gun Control Act of 1968 to enhance the ability of law enforcement to fight violent crime and narcotics trafficking." H.R.Rep. No. 495, 99th Cong., 2d Sess. 1 (1986), *reprinted in* 1986 U.S.C.C.A.N. 1327, 1327. Thus, we agree with the court's statement in *Hunter:*

When read together, then, § 922(*o* ) itself and the legislative records of the Omnibus Act, GCA, and FOPA demonstrate that Congress has sought to regulate the interstate flow of firearms, including machineguns, as a means to aid local law enforcement. Congress has found in the past that firearms travel in interstate commerce and pose a threat to local law enforcement. *Section 922(o) merely takes*

*Congressional regulation of this interstate flow of weapons one step further by barring most transactions involving post–1986 machineguns through a proscription against certain transfers and possessions.*

. . . Thus, although not explicitly stated in the language of the statute itself, it is evident that Congress prohibited the transfer and possession of most post–1986 machineguns not merely to ban these firearms, but rather, to control their interstate movement by proscribing transfer or possession.

*Hunter,* 843 F.Supp. at 248–49 (emphasis added). We therefore join the Eighth Circuit in concluding § 922(*o* ) represents a permissible exercise of the authority granted to Congress under the Commerce Clause. Thus, the district court did not err in failing to dismiss the indictment against Defendant.

## II.

Defendant next contends 26 U.S.C. § 5861(e) is unconstitutionally vague. Section 5861(e) provides that "[i]t shall be unlawful for any person . . . to transfer a firearm in violation of the provisions of this chapter." The definition of a firearm includes silencers. 26 U.S.C. § 5845(a)(7).[5] Defendant claims § 5861(e) is unconstitutionally vague as applied to him because a silencer cannot constitute a firearm within the meaning of the statute. Specifically, Defendant contends that although the statute designates a silencer as a firearm, such designation "makes no sense for the simple reason that a silencer is not a firearm." Aplt.Br. at 23. The government contends Defendant failed to properly reserve this issue as part of his conditional plea.

Fed.R.Crim.P. 11(a)(2) provides that a defendant may enter into a conditional plea with the consent of the government and approval by the district court. However, the conditional plea must specify "in writing the

---

5. More specifically, § 5845(a) states that "[t]he term 'firearm' means . . . (7) any silencer (as defined in section 921 of title 18, United States Code)." The referenced section, 18 U.S.C. § 921(a)(24), in turn provides:

The terms "firearm silencer" and "firearm muffler" mean any device for silencing, muf-

fling, or diminishing the report of a portable firearm, including any combination of parts, designed or redesigned, and intended for use in assembling or fabricating a firearm silencer or firearm muffler, and any part intended only for use in such assembly or fabrication.

right, on appeal from the judgment, to review of the adverse determination of any specified pretrial motion." *Id.; see also United States v. Ryan*, 894 F.2d 355, 360–61 (10th Cir.1990) (Rule 11 requires a defendant to reserve the specific issue to be appealed). In the absence of a conditional plea, a defendant who pleads guilty admits to all of the factual allegations contained in the indictment and the legal consequences of those acts. *See United States v. Broce*, 488 U.S. 563, 569–70, 109 S.Ct. 757, 762–63, 102 L.Ed.2d 927 (1989).

■ In the instant case, the indictment alleged that Defendant "knowingly transferred firearms to wit: two (2) .22 caliber silencers, no serial numbers, . . . in violation of [26 U.S.C. § 5861(e) ]." Aplee.App.Tab 1. Defendant pleaded guilty to this charge without reserving his claim that a silencer cannot constitute a firearm pursuant to Rule 11(a)(2) as part of his conditional plea. *See* Aplee. App.Tab 7, p. 69. By entering an unconditional plea of guilty to this charge, Defendant admitted that "he committed the conduct alleged in the indictment *and* that in so doing he committed the crime charged." *United States v. Allen*, 24 F.3d 1180, 1183 (10th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 493, 130 L.Ed.2d 404 (1994). Defendant's admission necessarily includes his concession that a silencer constitutes a firearm under § 5861(e). Thus, Defendant's guilty plea and resulting conviction "comprehended all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence." *Broce*, 488 U.S. at 589, 109 S.Ct. at 772; *see also Ryan*, 894 F.2d at 361.

AFFIRMED.