UNITED STATES of America, Plaintiff–Appellee,

v.

Gary BEUCKELAERE, Defendant–Appellant.

No. 95–1267.

United States Court of Appeals, Sixth Circuit.

Argued April 15, 1996.

Decided Aug. 2, 1996.

Rehearing and Suggestion for Rehearing En Banc Denied Sept. 6, 1996.*

---

* Judge Suhrheinrich would grant rehearing for reasons stated in his dissent.

Janice Kittel Mann, U.S. Attorney (argued and briefed), Office of the U.S. Attorney for the Western District of Michigan, Grand Rapids, MI, for plaintiff–appellee.

Lawrence J. Phelan (argued and briefed), Grand Rapids, MI, for defendant–appellant.

Before: CONTIE, SUHRHEINRICH, and COLE, Circuit Judges.

CONTIE, J., delivered the opinion of the court, in which COLE, J., joined. SUHRHEINRICH, J. (pp. 787–88), delivered a separate dissenting opinion.

CONTIE, Circuit Judge.

Defendant-appellant, Gary Beuckelaere, appeals the judgment entered after his guilty plea to possession of a machinegun in violation of 18 U.S.C. § 922(*o*), which he alleges is unconstitutional. For the following reasons, we affirm the decision of the district court.

## I.

On September 15, 1994, a single-count indictment was filed in the United States District Court for the Western District of Michigan, charging defendant with possession of a machinegun on February 22, 1994, in violation of 18 U.S.C. § 922(*o*)(1). Defendant pleaded guilty on February 22, 1994, and was sentenced to a term of imprisonment of 41 months and a three-year term of supervised release.

Defendant collected assault weapons and had a total of 13 weapons at his residence. Defendant's brother, Thomas Beuckelaere, contacted the Michigan State Police and informed the police that defendant was in possession of two firearms that were fully automatic machineguns. A search warrant was executed at defendant's home on February 22, 1994. Four weapons were seized in the search, and firearms technology experts determined that two M/11 nine millimeter semiautomatic pistols and a combination of parts found at defendant's home during the search constituted machineguns. Defendant admitted that he purchased the guns and parts from a gun dealer in Kentucky. Defendant also purchased literature from the gun dealer containing instructions on how to convert a Cobray M/11 semi-automatic pistol into a machinegun.

## II.

Defendant's sole argument on appeal is that 18 U.S.C. § 922(*o*) exceeds Congress' power to legislate under the Commerce Clause under the standard established by the Supreme Court in *United States v. Lopez,* — U.S. ——, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). The statute at issue, § 922(*o*), states:

(1) Except as provided in paragraph (2), it shall be unlawful for any person to transfer or possess a machinegun.

(2) This subsection does not apply with respect to—

(A) a transfer to or by, or possession by or under the authority of, the United States or any department or agency thereof or a State, or a department, agency, or political subdivision thereof; or

(B) any lawful transfer or lawful possession of a machinegun that was lawfully possessed before the date this subsection takes effect.

The effective date of this provision was May 19, 1986. Defendant argues this statute is similar to one the Supreme Court struck down in *Lopez,* in which the Court found that a portion of the Gun–Free School Zone Act of 1990, 18 U.S.C. § 922(q), exceeded the constitutional power granted to Congress to regulate commerce. The statute at issue in Lopez made it unlawful "for any individual knowingly to possess a firearm at a place

that the individual knows, or has reasonable cause to believe, is a school zone."

In reviewing the constitutionality of § 922(q) in *Lopez*, the Supreme Court delineated three categories of activity that Congress can regulate or protect under the Commerce Clause: (1) "the use of the channels of interstate commerce"; (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities"; and (3) "those activities having a substantial relation to interstate commerce." —— U.S. at ——–——, 115 S.Ct. at 1629–30. The Supreme Court found in *Lopez* that § 922(q) does not fall within any of these categories, because the statute does not regulate the channels of interstate commerce nor does it protect an instrumentality of interstate commerce. The Court then evaluated § 922(q) under the third category to determine whether it regulated an activity that substantially affected interstate commerce. The Court held that § 922(q) "by its terms has nothing to do with 'commerce' or any sort of economic enterprise, however broadly one might define those terms." *Id.* at ——, 115 S.Ct. at 1630–31. "[P]ossession of a gun in a local school zone is in no sense an economic activity that might, through repetition elsewhere, substantially affect any sort of interstate commerce." *Id.* at ——, 115 S.Ct. at 1634. Therefore, the Court in *Lopez* found § 922(q) unconstitutional under the Commerce Clause.

As the court in *United States v. Bell,* 70 F.3d 495, 497 (7th Cir.1995) pointed out, for criminal defendants, "[i]t appears that *United States v. Lopez* has raised many false hopes. Defendants have used it as a basis for challenges to various statutes. Almost invariably those challenges fail." *See United States v. Carolina,* 61 F.3d 917 (10th Cir. 1995) (challenge to 18 U.S.C. § 2119 (carjacking) and § 924(c)(1) (carrying firearm during a crime of violence)); *United States v. Oliver,* 60 F.3d 547 (9th Cir.1995) (car-jacking); *United States v. Sherlin,* 67 F.3d 1208 (6th Cir.1995) (arson); *Cheffer v. Reno,* 55 F.3d 1517 (11th Cir.1995) (18 U.S.C. § 248) (Freedom of Access to Clinic Entrances Act); *United States v. Dodge,* 61 F.3d 142 (2d Cir.) (possession of an unregistered destructive device and conspiracy to possess an unregistered firearm), *cert. denied,* —— U.S. ——, 116 S.Ct. 428, 133 L.Ed.2d 343 (1995); *United States v. Bolton,* 68 F.3d 396 (10th Cir. 1995) (18 U.S.C. § 1951—Hobbs Act), *cert. denied,* —— U.S. ——, 116 S.Ct. 966, 133 L.Ed.2d 887 (1996); *United States v. Collins,* 61 F.3d 1379 (9th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 543, 133 L.Ed.2d 446 (1995); *United States v. Hanna,* 55 F.3d 1456 (9th Cir.1995), and *United States v. Walker,* 59 F.3d 1196 (11th Cir.) (possession of a firearm by a former felon), *cert. denied,* —— U.S. ——, 116 S.Ct. 547, 133 L.Ed.2d 450 (1995).

In addition, challenges to the specific statute at issue in the present case, § 922(*o*), have failed. *United States v. Rambo,* 74 F.3d 948 (9th Cir.1996); *United States v. Wilks,* 58 F.3d 1518 (10th Cir.1995). For example, the Ninth Circuit in *Rambo* reasoned as follows:

> Although *Lopez* is instructive, it does not control our analysis of section 922(*o*). We agree with the Fifth and Tenth Circuits that section 922(*o*) represents a permissible exercise of the authority granted to Congress under the Commerce Clause.

> Section 922(*o*) prohibits the possession or transfer of machineguns only if they were not lawfully possessed before May 19, 1986. In other words, there can be "no unlawful possession under section 922(*o*) without an unlawful transfer." Regulating this category of possession, therefore, regulates commerce....

> Unlike section 922(q), section 922(*o*) comes within the first category enumerated by the Supreme Court in *Lopez*. Section 922(*o*) is "a regulation of the use of the channels of interstate commerce" because it is "an attempt to prohibit the interstate transportation of a commodity through the channels of commerce." *Lopez,* —— U.S. at ——, 115 S.Ct. at 1630. By regulating the market in machineguns, including regulating intrastate machinegun possession, Congress has effectively regulated the interstate trafficking in machineguns. "[T]here is a rational basis to conclude that federal regulation of intrastate incidents of transfer and possession is essential to ef-

fective control of the interstate incidents of such traffic."

The prohibition of possession under section 922(*o*) differs greatly from the prohibition in section 922(q). Section 922(q) did not regulate *the market in weapons,* and instead regulated merely the possession of a weapon in a specific geographic area. Section 922(*o*), on the other hand, prohibits the possession of all machineguns illegally transferred. Section 922(*o*) regulates the use of the channels of interstate commerce.

74 F.3d at 951–52 (citations deleted) (emphasis added).

■ We agree that § 922(*o*) is a proper exercise of the authority granted to Congress under the Commerce Clause because the statute falls within the first category articulated in *Lopez*—a regulation of the use of the channels of interstate commerce. The Supreme Court struck down § 922(q) in *Lopez* because it sought to regulate an activity which by its nature was purely intrastate and could not substantially affect commerce even where incidents were aggregated together. —— U.S. at ——, 115 S.Ct. at 1631. In contrast, § 922(*o*) regulates the "extensive, intricate, and definitely national market for machineguns" by prohibiting the transfer and possession of machineguns acquired after May 19, 1986. *United States v. Hunter,* 843 F.Supp. 235, 249 (E.D.Mich.1994). As the Court in *Rambo* pointed out, illegal possession of a machinegun cannot occur without an illegal transfer, which given the national marketplace for machineguns, involves the channels of interstate commerce.

The Tenth Circuit in *Wilks* reviewed the legislative history of firearms statutes and found that § 922(*o*), prohibiting the possession and transfer of post–1986 machineguns, represents regulation of an activity which Congress rationally determined was bound up with interstate attributes. 58 F.3d at 1520–22. When Congress originally enacted § 922 under the Omnibus Crime Control and Safe Streets Act of 1968 ("Omnibus Act"), it regulated the interstate flow of firearms under the commerce power based upon explicit findings that "only through adequate Federal control over interstate and foreign commerce in these weapons, and over all persons en-

gaging in the businesses of importing, manufacturing, or dealing in them, can ... effective State and local regulation of this traffic be made possible." *Id.* at 1521 (citing Pub.L. No. 90–351, § 901(a)(3), 82 Stat. 197 (1968)). In 1968, Congress replaced the Omnibus Act with the Gun Control Act ("GCA"), 18 U.S.C. §§ 921–8, which "restricted public access to firearms, and channeled commerce in firearms 'through federally licensed ... dealers in an attempt to halt mail-order and interstate consumer traffic in these weapons.'" *United States v. Marchant,* 55 F.3d 509, 513 (10th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 260, 133 L.Ed.2d 184 (1995). The stated purpose of the Act was "to strengthen Federal controls over interstate and foreign commerce in firearms and to assist the States effectively to regulate firearms traffic within their borders." H.R.Rep. No. 1577, 90th Cong., 2d Sess., *reprinted in* 1968 U.S.C.C.A.N. 4410, 4411–15. Congress found that "the increasing rate of crime and lawlessness and the growing use of firearms in violent crime clearly attest to a need to strengthen Federal regulation of interstate firearms traffic." *Id.* Congress, responding to widespread national concern that existing Federal control over the sale and shipment of firearms across state lines was grossly inadequate, found the need for further restrictions on interstate firearms traffic, "which would not interfere with legitimate recreational and self-protection uses of firearms by law-abiding citizens." *Id.* Section 922(*o*) was enacted as part of the Firearms Owners' Protection Act of 1986 ("FOPA"), which amended the GCA, in order "to strengthen the Gun Control Act of 1968 to enhance the ability of law enforcement to fight violent crime and narcotics trafficking." H.R.Rep. No. 495, 99th Cong., 2d Sess. 1 (1986), *reprinted in* 1986 U.S.C.C.A.N. 1327, 1327. As the court in *United States v. Hale,* 978 F.2d 1016, 1018 (8th Cir.1992), *cert. denied,* 507 U.S. 997, 113 S.Ct. 1614, 123 L.Ed.2d 174 (1993), noted, Congress did not alter its prior findings when it enacted § 922(*o*) under FOPA.

We agree with the court in *Wilks* that, when read together, § 922(*o*) and the legislative records of the Omnibus Act, GCA, and FOPA "demonstrate that Congress has

sought to regulate the interstate flow of firearms, including machineguns, as a means to aid local law enforcement." *Id.* at 1522, quoting *United States v. Hunter*, 843 F.Supp. 235, 249 (E.D.Mich.1994). Congressional findings indicate that intrastate possession, distribution and sale of firearms directly and injuriously affects the introduction of them into other states to the injury of the public health and welfare. Machineguns travel in interstate commerce, posing a threat to local law enforcement, which has a disruptive effect on interstate commerce. As the Supreme Court in *Katzenbach v. McClung*, 379 U.S. 294, 303, 85 S.Ct. 377, 383, 13 L.Ed.2d 290 (1964) stated, "where we find that the legislators, in light of the facts and testimony before them, have a rational basis for finding a chosen regulatory scheme necessary to the protection of commerce, our investigation is at an end." In *Perez v. United States*, 402 U.S. 146, 156–57, 91 S.Ct. 1357, 1362–63, 28 L.Ed.2d 686 (1971), the Supreme Court recognized the singularly disruptive potential that acts of violence might have on interstate commerce. *Id.* at 156–57, 91 S.Ct. at 1362–63. In barring most transactions involving post–1986 machineguns through a prohibition against transfers and possessions, we believe Congress could have rationally concluded that the link between the violence caused by machineguns and the consequent negative commercial effects was substantial. The legislative history of the FOPA and its predecessors indicates that Congress considered "the relationship between the availability of machineguns, violent crime, and narcotics trafficking." *United States v. Hale*, 978 F.2d at 1018. We find that the regulation of machinegun transfer and possession sufficiently affects interstate commerce in order to come within Congress' power to legislate under the Commerce Clause.

 Finally, we believe the statute is constitutional because machineguns are "things in interstate commerce" which flow across state lines for profit by business entities and hamper local and state law enforcement efforts. Just as courts have held that Congress can regulate narcotics, including intrastate narcotics possession, to effectively regulate the interstate trafficking in narcotics, we believe a similar rationale applies in the present case. As the Supreme Court stated in *Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 256, 85 S.Ct. 348, 357, 13 L.Ed.2d 258 (1964), "the authority of Congress to keep the channels of interstate commerce free from immoral and injurious uses has been frequently sustained...." This court, for example, found in *United States v. Scales*, 464 F.2d 371 (6th Cir.1972) that Title II of the comprehensive Drug Abuse Prevention and Control Act of 1970 was a permissible exercise of power under the Commerce Clause, stating:

> We believe ... the provisions of Title II of the Comprehensive Drug Abuse Prevention and Control Act presently before us clearly constitute a permissible exercise of Congress's powers under the Commerce Clause. In Section 101 of the Act, 21 U.S.C. § 801, Congress has summarized the results of its in-depth investigations into the problems of drug abuse in the United States.... Section 101 of the present Act summarizes Congress's conclusions that illegal intrastate activities involving controlled substances substantially affect interstate commerce and that the effective control of the interstate problem requires that intrastate, as well as interstate, activities be regulated.

> ....

> Perhaps to a greater degree than the extortionate credit transactions which were before the Supreme Court in *Perez*, the unlawful importation, manufacture, distribution, and *possession* of controlled substances have thus been found by Congress to have a substantial and direct effect on interstate commerce, although individual instances of these proscribed activities may be strictly intrastate in nature.

*Id.* at 375 (emphasis added). *See also United States v. Atkinson*, 513 F.2d 38, 39–40 (4th Cir.1975); *Perez v. United States*, 402 U.S. at 157, 91 S.Ct. at 1363 (Congress has power to regulate the threat that loan sharking poses to the "funds" of "numerous localities"); *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (regulation of unfair labor practices, which pose a threat to instrumentalities of commerce, valid

under the Commerce Clause). As with the federal regulation of controlled substances and loan sharking, we believe there is a rational basis to conclude that federal regulation of intrastate incidents of transfer and possession of machineguns is essential to effective control of interstate incidents of traffic in machineguns. The "commerce clause does not operate so as to render the nation powerless to defend itself against economic forces that Congress decrees inimical or destructive of the national economy." *North American Co. v. SEC*, 327 U.S. 686, 705, 66 S.Ct. 785, 796, 90 L.Ed. 945 (1946).

■ We do not believe that *Lopez* effects this rationale. As the Court in *United States v. Bell* pointed out, the Gun–Free School Zone Act failed to survive the constitutional challenge in *Lopez* because it was not an essential part of a larger regulation of economic activity, and the statute did not contain congressional findings which would enable the Court to evaluate the legislative judgment that the activity in question substantially affected interstate commerce. 70 F.3d at 498. Section 922(*o*) does not suffer from the same infirmities. Although mere possession of a machinegun by a defendant, in and of itself, may have minimal impact on interstate commerce, the transfer of machineguns in interstate commerce, combined with the possession and transfer of those firearms intrastate, has a substantial impact. Regulation of purely intrastate activity is constitutional when such activity has a substantial affect on interstate commerce. *Wickard v. Filburn*, 317 U.S. 111, 125, 63 S.Ct. 82, 89, 87 L.Ed. 122 (1942); *Maryland v. Wirtz*, 392 U.S. 183, 196, 88 S.Ct. 2017, 2023–24, 20 L.Ed.2d 1020 (1968) (where a general regulatory statute bears a substantial relation to commerce, the de minimus character of individual instances arising under that statute is of no consequence). Unlike § 922(q), which regulated the possession of all firearms within a school zone, a purely local activity concerning a specific geographic location, § 922(*o*) regulates a specific type of gun—machineguns, which by their nature are a commodity that move in interstate commerce.

The Court in *Lopez* declined to expand Congress' authority under the Commerce Clause to encompass § 922(q) because the statute plowed "thoroughly new ground" and represented "a sharp break with the longstanding pattern of federal firearm regulation." —— U.S. at ——, 115 S.Ct. at 1632. We do not find that § 922(*o*) constitutes such a break. First, the statute does not have the territorial ramifications of § 922(q), which caused the Court concern about intrusion on state sovereignty through the creation of a federal gun-free zone around every school. Second, § 922(*o*) limits its reach to a discrete set of firearms possessions that have an implicit connection with interstate commerce. See *United States v. Bass*, 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971). The statute contains an implicit requirement that the possession of the firearm have a concrete tie to a commercial transaction, because § 922(*o*) prohibits the private possession or transfer of machineguns only if they were not lawfully possessed prior to May 19, 1986. Therefore, transfer or possession of a machinegun is a violation of the law under this section only if the gun was manufactured or illegally transferred after May 19, 1986. Congress is regulating the channels of interstate commerce by prohibiting from the introduction into the stream of commerce machineguns manufactured, imported, or otherwise illegally obtained after the effective date of the Act. There can be no unlawful possession without an unlawful transfer. For example, in the present case, prior to defendant's possession, the firearms at issue moved in interstate commerce. Defendant illegally purchased the guns and necessary conversion parts in Kentucky and transferred them to Ohio. Section 922(*o*) is a regulation which attempts to prohibit this "interstate transportation of a commodity through the channels of commerce." *Lopez*, —— U.S. at ——, 115 S.Ct. at 1630.

Finally, unlike § 922(q), the possession and transfer of machineguns arise out of or are connected with a commercial transaction, which viewed in the aggregate substantially affect interstate commerce. *Id.* Whereas *Lopez* found Congress did not have the power to prohibit possession of all firearms within a particular intrastate locality that was

unrelated to commerce, we believe that Congress has the power to regulate the traffic in machineguns introduced into the channels of commerce after 1986 by prohibiting their possession and transfer at any location because of their potentially harmful use.

Given the "broad language" of the Supreme Court's previous decisions addressing congressional enactments pursuant to the Commerce Clause, we do not believe § 922(*o*) breaks new ground. Defendant's interpretation of congressional authority under the Commerce Clause is too narrow, and his interpretation of the Court's decision in *Lopez* is too broad. In *Lopez*, the Court found that § 922(q) had exceeded the limits, established in its previous decisions, of Congress' power to regulate commerce; the Court in *Lopez* did not, however, constrict Congress' authority to regulate a commodity, such as machineguns, in interstate commerce, involving the channels of interstate commerce, and having a substantial impact on interstate commerce. Whereas § 922(q) sought to regulate an activity which by its nature was purely intrastate, the possession of any firearm in a particular location, creating a federal gun-free zone around schools, § 922(*o*) regulates machineguns irrespective of their location and which by their nature are a dangerous commodity "transferred across state lines for profit by business entities." *United States v. Hunter*, 843 F.Supp. at 249. As the Fifth Circuit stated in *United States v. Lopez*, 2 F.3d 1342, 1356 (5th Cir.1993), *aff'd*, —— U.S. ——, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), unlike § 922(q), § 922(*o*) is "restricted to a narrow class of highly destructive, sophisticated weapons that have been either manufactured or imported after enactment of The Firearms Owners' Protection Act, which is more suggestive of a nexus to or affect on interstate or foreign commerce than possession of any firearms whatever, no matter when or where originated, within one thousand feet of the grounds of a school." Section 922(*o*) is the latest means

selected by Congress to regulate and police the interstate firearm market that Congress has rationally concluded is not sufficiently capable of being addressed by local law enforcement efforts.

Because we believe there is a rational basis for the legislative judgment that possession and transfer. of machineguns acquired after 1986 have a substantial effect on interstate commerce, and because Congress has the power to regulate machineguns as things in interstate commerce, moving in the channels of interstate commerce, we find that § 922(*o*) is a constitutional exercise of Congress' power to regulate activities in and affecting commerce. The district court is **AFFIRMED.**

SUHRHEINRICH, Circuit Judge, dissenting.

Like the majority, I do not question the wisdom of regulating the transfer and possession of machine guns. I disagree, however, with the majority's attempt to uphold 18 U.S.C. § 922(*o*) as a valid exercise of Congress's Commerce Clause power in light of *United States v. Lopez*, —— U.S. ——, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995).

The arguments against upholding § 922(*o*) have been persuasively set out by Judge Jones in her dissent from *United States v. Kirk*, 70 F.3d 791 (5th Cir.1995), *petition for reh'g en banc granted*, 78 F.3d 160 (5th Cir. 1996). Briefly, however, I address several areas in which I disagree with the majority.

In *Lopez*, the Supreme Court considered the constitutionality of 18 U.S.C. § 922(q), which banned the possession of firearms near schools. After delineating three categories of permissible legislation under the Commerce Clause,[1] the Court determined that only the third category provided an arguable basis for the statute. *Lopez*, —— U.S. at ——, 115 S.Ct. at 1630. Even under that category, the statute failed because the regulated activity was not connected with a commercial transaction affecting interstate commerce in the aggregate, and the statute did

---

1. The three categories of permissible Commerce Clause legislation under *Lopez* are: (1) regulation of "the use of the channels of interstate commerce"; (2) regulation and protection of "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities"; and (3) regulation of "those activities having a substantial relation to interstate commerce." *Lopez*, —— U.S. at —————, 115 S.Ct. at 1629–30.

not contain a jurisdictional element otherwise limiting its reach to activities connected to interstate commerce. *Id.*

Because of the similarity between § 922(q) and § 922(*o*) in that each bans the mere possession of certain firearms, it would seem natural to evaluate § 922(*o*) under the third *Lopez* category. Instead of adhering to the framework suggested by *Lopez*, however, the majority strains the limits of the first two categories to buttress its decision. Attempting to bring § 922(*o*) within the first *Lopez* category, it indicates that prosecution under § 922(*o*) necessarily involves an illegal transfer implicating the channels of interstate commerce. This view overlooks the plain language of the statute, which clearly allows prosecution for mere possession of a machine gun. Suggesting that the second category is appropriate, the majority opines that Congress must have found that machine guns are "things in interstate commerce" which Congress sought to regulate because of their effect on interstate commerce. The only support offered for these purported congressional findings, however, is legislative history imported from other firearm statutes. Reliance on the legislative history of a statute is a tenuous enough interpretive technique—reliance on the history of other statutes is an even more perilous undertaking. There is simply no evidence in the legislative history of § 922(*o*) of a Congressional determination that possession of machine guns necessarily implicates interstate commerce.

Turning to the third *Lopez* category, the majority concludes that machine guns have a substantial relation to interstate commerce simply because they "travel in interstate commerce, posing a threat to local law enforcement, which has a disruptive effect on interstate commerce." This reasoning would be potentially persuasive save its express rejection in *Lopez*. Like § 922(q), § 922(*o*) as applied to possession "has nothing to do with 'commerce' or any sort of economic enterprise." *Id.* at ——, 115 S.Ct. at 1630–31. The majority does not attempt to distinguish its analysis under the third *Lopez* category precisely because of the difficulty of doing so.

To fill the void, it relies on a thaumatrope of alternating references to the three *Lopez* categories to create the illusion that all three are satisfied.

Although the majority's approach is consistent with the other circuits that have upheld the statute, we are not constrained to follow their views if, in our opinion, they are based on incomplete or incorrect analysis. *Nixon v. Kent County,* 76 F.3d 1381, 1388 (6th Cir.1996) (en banc).

Accepting the obvious parallels between § 922(q) as discussed in *Lopez* and § 922(*o*), I would hold that the only correct analysis is under the third category. Under the third category, § 922(*o*) should fail ultimately for the same reason § 922(q) failed in *Lopez*: the absence of a requirement that possession have a concrete tie to interstate commerce. *Id.* at ——, 115 S.Ct. at 1631. Despite my agreement with the majority on the wisdom of regulating such destructive weapons, we are not free to ignore the Supreme Court's warning against "convert[ing] congressional authority under the Commerce Clause to a general police power of the sort retained by the States." *Id.* at ——, 115 S.Ct. at 1634.

I therefore respectfully dissent.