**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

No. 96-10768

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

STEVEN SCOTT KNUTSON,

Defendant-Appellant.

Appeal from the United States District Court
For the Northern District of Texas

(          , 1997)

Before HIGGINBOTHAM, WIENER, and DENNIS, Circuit Judges.

PER CURIAM:

In this appeal we must revisit the question whether Congress's enactment of 18 U.S.C. § 922(o), criminalizing the transfer or possession of a machinegun that was not already lawfully possessed before May 19, 1986, exceeds the limit of its power under the Commerce Clause.[1]  Every other circuit that has considered this issue has upheld § 922(o) as a rational exercise of that power,

---

[1]  This issue was the subject of our rehearing en banc in <u>United States v. Kirk</u>, 70 F.3d 791, (5th Cir. 1995), <u>vacated</u>, 78 F.3d 169, <u>aff'd en banc by an equally divided court</u>, 105 F.3d 997 (5th Cir. 1997).

albeit for differing reasons.[2]  Today, we join those circuits in affirming the constitutionality of § 922(o).

**I**
**FACTS AND PROCEEDINGS**

Appellant Steven Scott Knutson was arrested on July 28, 1995, and charged with possessing a loaded .45 caliber Spitfire assault rifle, serial number 3023, a firearm that is classified as a machinegun for purposes of 26 U.S.C. § 5845(b).[3]  Knutson did not possess the machinegun under the authority of the United States government or of any state governmental department, agency, or political subdivision; neither did he possess the machinegun lawfully prior to the effective date of § 922(o), May 19, 1986.

Knutson was indicted on one count of unlawful possession of a machinegun in violation of § 922(o).[4]  Before entering his guilty

---

[2]  See United States v. Rybar, 103 F.3d 273 (3d Cir. 1996)(upholding § 922(o) under the third of three possible categories of activity that Congress may regulate under the Commerce Clause, as a regulation of activities having a substantial effect on interstate commerce); United States v. Kenney, 91 F.3d 884 (7th Cir. 1996)(upholding § 922(o) under the third category, as a regulation of activities having a substantial effect on interstate commerce); United States v. Beuckelaere, 91 F.3d 781 (6th Cir. 1996)(upholding § 922(o) under all three Lopez categories); United States v. Rambo, 74 F.3d 948 (9th Cir.)(upholding § 922(o) under the first category, as a regulation of channels of interstate commerce), cert. denied, 117 S.Ct. 72, 136 L.Ed.2d 32 (1996); United States v. Wilks, 58 F.3d 1518 (10th Cir. 1995)(upholding § 922(o) under the second category, as a regulation of a thing in interstate commerce).

[3]  A "machinegun" is defined in 26 U.S.C. § 5845(b) as "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger."  See 18 U.S.C. § 921(a)(23).

[4]  Congress passed § 922(o) as part of the Firearms Owners' Protection Act of 1986, Pub. L. No. 99-308, 100 Stat. 449 (1986),

plea, Knutson filed a motion to dismiss the indictment, arguing that § 922(o) is unconstitutional in light of the Supreme Court's decision in <u>United States v. Lopez</u>.[5]  After the district court denied the motion, Knutson entered a conditional guilty plea, reserving the right to appeal the district court's ruling.  This appeal followed.

Both Knutson and the government filed summary appellate briefs, anticipating that the outcome of our en banc consideration of this issue in <u>United States v. Kirk</u> would be dispositive for purposes of the instant appeal.  Instead, <u>Kirk</u> resulted in an affirmance by an equally divided en banc court and has no precedential value,[6] so we must consider anew the issue of § 922(o)'s constitutionality.

**II**
**ANALYSIS**

A.  STANDARD OF REVIEW

In <u>Lopez</u>, the Supreme Court affirmed our conclusion that the

---

which amended the Gun Control Act of 1968, 18 U.S.C. §§ 921-28. Section 922(o) provides, in relevant part:
> (o)(1)  Except as provided in paragraph (2), it shall be unlawful for any person to transfer or possess a machinegun.
> (2)  This subsection does not apply with respect to--
> * * * * * *
> (B)  any lawful transfer or lawful possession of a machinegun that was lawfully possessed before the date this subsection takes effect.

[5]  514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995).

[6]  <u>See</u> <u>Neil v. Biggers</u>, 409 U.S. 188, 192, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); <u>Henderson v. Fort Worth Indep. Sch. Dist.</u>, 584 F.2d 115, 116 (5th Cir. 1978)(en banc), <u>cert. denied</u>, 441 U.S. 906, 99 S.Ct. 1996, 60 L.Ed.2d 375 (1979).

Gun Free School Zones Act of 1990, 18 U.S.C. § 922(q),[7] was unconstitutional because it regulated conduct falling outside the scope of the Commerce Clause. In doing so, the Court identified an outer limit to congressional authority under the Commerce Clause; nevertheless, the Court did not purport to eliminate or erode well-established Commerce Clause precedents.[8] In particular, the Court made clear that federal Commerce Clause legislation continues to merit a high degree of judicial deference, and that courts considering the constitutionality of such legislation should apply only "rational basis" review.[9] Accordingly, we must limit our inquiry to a determination whether Congress <u>could have</u> had a rational basis to conclude that its enactment of § 922(o) was a valid exercise of its commerce power.

As the result in <u>Lopez</u> demonstrates, however, deference is not acquiescence; this court has the obligation to review the facts and circumstances of each case and determine the constitutionality of each statute brought before us for review. The question for us to decide today is whether Congress could rationally conclude that § 922(o) effectively regulates interstate trafficking in

---

[7] 18 U.S.C. § 922(q). Section 922(q) made it unlawful "for any individual knowingly to possess a firearm at a place that the individual knows, or has reasonable cause to believe, is a school zone."

[8] <u>See</u> <u>Lopez</u>, 115 S.Ct. at 1634 ("Admittedly, some of our prior cases have taken long steps down that road, giving great deference to congressional action. The broad language in these opinions has suggested the possibility of additional expansion, but we decline here to proceed any further.").

[9] <u>Id.</u> at 1629.

machineguns or otherwise regulates conduct that substantially affects interstate commerce.

B.   BACKGROUND: THE LOPEZ DECISION

The Lopez Court described three categories of activity that Congress may regulate under the Commerce Clause:  (1) the use of the channels of interstate commerce; (2) "the instrumentalities of interstate commerce, even though the threat may come only from intrastate activities"; and (3) activities which have "a substantial relation to interstate commerce ... i.e., those activities that substantially affect interstate commerce."[10]

As the first two categories did not apply to § 922(q), the Lopez Court analyzed that statute under the third category to determine whether "a rational basis existed for concluding that [the] regulated activity sufficiently affected interstate commerce."[11]  The Court ultimately concluded that § 922(q) failed to satisfy the third category.  First, the Court noted that "possession of a gun in a local school zone is in no sense an economic activity that might, through repetition elsewhere, substantially affect any sort of interstate commerce."[12]  Moreover, Congress failed to include congressional findings that might have enabled the Court "to evaluate the legislative judgment that the activity in question substantially affected interstate commerce."[13]

---

[10]   Id. at 1629-30.

[11]   Id. at 1629.

[12]   Id. at 1634.

[13]   Id. at 1632.

Thus, absent congressional findings to demonstrate a rational basis when none was "visible to the naked eye,"[14] the Court held that the statute was unconstitutional.

C.    SECTION 922(o)

In contrast to § 922(q), much of the conduct covered by § 922(o) fits comfortably within Constitutional bounds under either of the first two Lopez categories, as the vast majority of machinegun possessions constitute the culminating step in interstate commercial transactions.[15] "As such, § 922(o) represents Congressional regulation of an item bound up with interstate attributes and thus differs in substantial respect from legislation concerning possession of a firearm within a purely local school zone."[16]

We are not unmindful that the statute is worded in terms broad enough to support a conviction -- at least theoretically, if not practically -- in rare yet conceivable instances of purely non-

---

[14]    Id. at 1632.

[15]    The interstate flow of machineguns "not only has a substantial effect on interstate commerce; it is interstate commerce." United States v. Hunter, 843 F.Supp. 235, 249 (E.D. Mich. 1994).  Moreover, as § 922(o) prohibits the possession or transfer only of machineguns not lawfully possessed prior to May 19, 1996,  it is clear that Congress's intent was focused on prohibiting the introduction into the stream of interstate commerce machineguns manufactured, imported, or otherwise illegally obtained, after the effective date of the Act.  See Wilks, 58 F.3d at 1522(quoting United States v. Hunter, 843 F.Supp. 235, 249 (E.D. Mich. 1994))("Although not explicitly stated in the language of the statute itself, it is evident that Congress prohibited the transfer and possession of most post-1986 machineguns not merely to ban these firearms, but rather, to control their interstate movement by proscribing transfer or possession.").

[16]    Wilks, 58 F.3d at 1521.

commercial intrastate possession. In fact, those who believe § 920(o) is unconstitutional focus their attention exclusively on such instances of "mere" possession. Even crediting that some machineguns may be "homemade" and are therefore not the object of a commercial transaction, it would be myopic to view possession in a vacuum.[17] Rather than wallow in that debate, however, we choose the path of least resistance and go directly to the third Lopez category to determine whether all transfers and possessions of machineguns, including those that might conceivably be characterized as exclusively intrastate or noncommercial, could substantially affect interstate commerce. We conclude that they could indeed.

D. SUBSTANTIAL EFFECT ON INTERSTATE COMMERCE

It is obvious "to the naked eye" that the transfer and possession of machineguns has a substantial effect on interstate commerce. For example, in Rybar, the Third Circuit held that § 922(o) "can be sustained because it targets the possession of machine guns as a demand-side measure to lessen the stimulus that prospective acquisition would have on the commerce in machine

---

[17] See, e.g., Kirk, 70 F.3d at 796 ("In this context, the limited ban on possession of machineguns must be seen as a necessary and proper measure meant to allow law enforcement to detect illegal transfers where the banned commodity has come to rest: in the receiver's possession. In effect, the ban on such possession is an attempt to control the interstate market for machineguns by creating criminal liability for those who would constitute the demand-side of the market, i.e., those who would facilitate illegal transfer out of the desire to acquire mere possession.").

guns."[18]   In <u>Kenney</u>, the Seventh Circuit held that "there is a rational basis to regulate the local conduct of machine gun possession, including possession resulting from home manufacture, to effectuate § 922(o)'s purpose of freezing the number of legally possessed machine guns at 1986 levels, an effect that is closely entwined with interstate commerce."[19]  Finally, Judge Higginbotham's en banc opinion in <u>Kirk</u>, explaining why he would uphold the constitutionality of § 922(o), presented a forceful collection of evidence to "support a legislative judgment that the possession of machine guns interferes with federal drug enforcement."[20]

We need not delve into theoretical considerations, however, as we discern convincing evidence of a substantial effect on interstate commerce in the extensive legislative histories that accompanied each prior incarnation of what has been a durable line of federal machinegun regulations.  We cannot ignore those congressional findings:  Even though they were not explicitly reiterated in support of § 922(o), they clearly subsist in the cumulative memory of Congress.  The <u>Lopez</u> Court refused to consider § 922(q) in light of the legislative history from earlier firearms legislation, for, in contrast to the statute presently under review, § 922(q) "represent[ed] a sharp break with the longstanding pattern of federal firearms legislation."[21]  Section 922(o), on the

---

[18]   103 F.3d at 283.

[19]   91 F.3d at 889.

[20]   <u>Kirk</u>, 105 F.3d at 1000.

[21]   <u>Lopez</u>, 115 S.Ct. at 1632.

8

other hand, is but the latest manifestation of the federal government's longstanding record of regulating machineguns. The Seventh Circuit offered a succinct review of that tradition in its opinion in Kenney:

> Congress has closely regulated machine guns pursuant to its taxation power since the National Firearms Act of 1934, which subjected machine guns, unlike ordinary firearms, to federal registration and a transfer tax. Hardy, 17 Cumb. L. Rev. at 593. The Act was the first major federal attempt at firearms regulation, and it expressly targeted machine guns, a modern weapon whose unusual destructive power was of great appeal to interstate organized crime. Id. In considering the bills that became the Gun Control Act of 1968, Congress found that federal control over firearms licensing for dealers, even for intrastate activity, was necessary to address the serious problems associated with interstate trafficking in firearms generally. S.Rep. No. 1097, 90th Cong., 2d Sess., reprinted in 1968 U.S.C.C.A.N. 2112, 2114, 2168. In light of these findings and enactments, the 1986 addition of § 922(o) was not novel but incremental, merely preventing further growth in the number of machine guns in private hands as an exercise of the historic federal interest in the regulation of machine guns. As such, and quite unlike § 922(q), deference to Congress's accumulated institutional expertise is appropriate.[22]

Congress did not alter or repudiate any of its prior findings when it enacted § 922(o) under the Firearm Owner's Protection Act (FOPA). In fact, Congress specifically noted that one of the aims of the FOPA was "to strengthen the Gun Control Act of 1968 to enhance the ability of law enforcement to fight violent crime and narcotics trafficking."[23] Thus, when we read § 922(o) in pari materiae with its legislative pedigree, we see clearly that

---

[22] Kenney, 91 F.3d at 890-91.

[23] H.R.Rep. No. 495, 99th Cong., 2d Sess. 1 (1986), reprinted in 1986 U.S.C.C.A.N. 1327, 1327.

9

Congress views "the availability of machineguns, violent crime, and narcotics trafficking"[24] as parts of one larger problem. Even if we were to disagree with that assessment, we cannot say that Congress could not have had a rational basis for its conclusion.

## III
## CONCLUSION

We hold that Congress could have had a rational basis for concluding that § 922(o) regulates conduct that has a substantial effect on interstate commerce, and that § 922(o) is not unconstitutional. Therefore, we need not consider whether the statute would be constitutional under either of the other two Lopez categories. As such, Knutson's conviction for unlawfully possessing a machinegun in violation of § 922(o) is AFFIRMED.

---

[24] Beuckelaere, 91 F.3d at 785 (quoting United States v. Hale, 978 F.2d 1016 (8th Cir. 1992), cert. denied, 507 U.S. 997, 113 S.Ct. 1614, 123 L.Ed.2d 174 (1993)).