**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Charles Roy RAMBO, Defendant–**
**Appellant.**

No. 94–30426.

United States Court of Appeals,
Ninth Circuit.

Submitted Nov. 3, 1995*.

Decided Jan. 25, 1996.

---

* The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34–4.

Jay F. Lansing, Moses Law Firm, Billings, Montana, for defendant-appellant.

C. Ed Laws, Assistant United States Attorney, Billings, Montana, for plaintiff-appellee.

Before WRIGHT, BEEZER and HAWKINS, Circuit Judges.

Opinion by Judge BEEZER.

BEEZER, Circuit Judge:

Charles Roy Rambo appeals his convictions of one count each of unlawful possession of a firearm and possession of an unregistered silencer. 18 U.S.C. § 922(o); 26 U.S.C. §§ 5841, 5861(d), 5871. He challenges his conviction for unlawful possession of a firearm on the ground that 18 U.S.C. § 922(o) is unconstitutional. He also argues that the district court erred in denying his motions: (1) to suppress evidence discovered during a search; (2) to suppress statements

made by Rambo to the police; (3) to dismiss the indictment because of government misconduct violating his right to due process of law; and (4) for a judgment of acquittal. Finally, he contends that the district court erred in admitting evidence of the serial number on the firearm.

We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

### I

■■ Rambo first argues that his conviction for unlawful possession of a firearm should be reversed because 18 U.S.C. § 922(*o*) is unconstitutional. Rambo contends that section 922(*o*) exceeds the authority granted to Congress under the Commerce Clause. We review de novo the constitutionality of a statute. *United States v. Sahhar*, 56 F.3d 1026, 1028 (9th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 400, 133 L.Ed.2d 320 (1995). We hold that section 922(*o*) is a proper exercise of the authority granted to Congress under the Commerce Clause.

Section 922(*o*) states:

(1) Except as provided in paragraph (2), it shall be unlawful for any person to transfer or possess a machinegun.

(2) This subsection does not apply with respect to—

(A) a transfer to or by, or possession by or under the authority of, the United States or any department or agency thereof or a State, or a department, agency, or political subdivision thereof; or

(B) any lawful transfer or lawful possession of a machinegun that was lawfully possessed before the date this subsection takes effect.

We review section 922(*o*) in light of the Supreme Court's recent decision in *United States v. Lopez*, —— U.S. ——, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). In *Lopez*, the Supreme Court held that the Gun–Free School Zones Act of 1990, 18 U.S.C. § 922(q), is beyond the scope of the authority granted Congress by the Commerce Clause, and is thus unconstitutional. Section 922(q) made it unlawful "for any individual knowingly to possess a firearm at a place that the individual knows, or has reasonable cause to believe, is a school zone."

In reviewing the constitutionality of section 922(q), the Supreme Court explained that there are three categories of activity that Congress can regulate or protect under the Commerce Clause: (1) "the use of the channels of interstate commerce"; (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities"; and (3) "those activities having a substantial relation to interstate commerce." *Id.* at —— – ——, 115 S.Ct. at 1629–30. Section 922(q) does not fall within any of these categories.

The Court first determined that section 922(q) does not fall within the first two categories because it does not regulate the channels of interstate commerce nor does it protect an instrumentality of interstate commerce. The Court then examined the section under the third category. The Court held that section 922(q) "by its terms has nothing to do with 'commerce' or any sort of economic enterprise, however broadly one might define those terms." *Id.* at —— – ——, 115 S.Ct. at 1630–31. "[P]ossession of a gun in a local school zone is in no sense an economic activity that might, through repetition elsewhere, substantially affect any sort of interstate commerce." *Id.* at ——, 115 S.Ct. at 1634. Thus, because section 922(q) does not regulate an activity that substantially affects interstate commerce, the Court held that section 922(q) is unconstitutional under the Commerce Clause.

Although *Lopez* is instructive, it does not control our analysis of section 922(*o*). We agree with the Fifth and Tenth Circuits that section 922(*o*) represents a permissible exercise of the authority granted to Congress under the Commerce Clause. *United States v. Kirk*, 70 F.3d 791 (5th Cir.1995); *United States v. Wilks*, 58 F.3d 1518 (10th Cir.1995).

Section 922(*o*) prohibits the possession or transfer of machineguns only if they were not lawfully possessed before May 19, 1986.

In other words, there can be "no unlawful possession under section 922(*o*) without an unlawful transfer." *Kirk*, 70 F.3d at 796. Regulating this category of possession, therefore, regulates commerce. "In effect, the ban on such possession is an attempt to control the interstate market for machineguns by creating criminal liability for those who would constitute the demand-side of the market, i.e., those who would facilitate illegal transfer out of the desire to acquire mere possession." *Id.*

Unlike section 922(q), section 922(*o*) comes within the first category enumerated by the Supreme Court in *Lopez. Id.* Section 922(*o*) is "a regulation of the use of the channels of interstate commerce" because it is "an attempt to prohibit the interstate transportation of a commodity through the channels of commerce." *Lopez,* —— U.S. at ——, 115 S.Ct. at 1630. By regulating the market in machineguns, including regulating intrastate machinegun possession, Congress has effectively regulated the interstate trafficking in machineguns. "[T]here is a rational basis to conclude that federal regulation of intrastate incidents of transfer and possession is essential to effective control of the interstate incidents of such traffic." *Kirk*, 70 F.3d at 797.

The prohibition of possession under section 922(*o*) differs greatly from the prohibition in section 922(q). Section 922(q) did not regulate the market in weapons, and instead regulated merely the possession of a weapon in a specific geographic area. Section 922(*o*), on the other hand, prohibits the possession of all machineguns illegally transferred. Section 922(*o*) regulates the use of the channels of interstate commerce. Therefore, we join the Fifth and Tenth Circuits in holding that section 922(*o*) is a proper exercise of the authority granted to Congress under the Commerce Clause.

## II

Rambo next argues that the district court erred in denying his motion to suppress the firearm and silencer that were the subjects of his convictions. Rambo contends that he had a legitimate expectation of privacy in the black canvas bag containing the two items at issue, and that Deputy Sheriff William Graf improperly opened the bag without a search warrant. We disagree.

■ We review de novo the validity of a warrantless search. *United States v. Ogbuehi,* 18 F.3d 807, 812 (9th Cir.1994).

No one disputes what occurred during the search; the only disagreement is over whether it was an illegal search and seizure. On February 25, 1993, Deputy Graf received a call regarding a burglary at Rambo's residence. When Graf arrived, he spoke to Jim Morgan, Rambo's brother-in-law, who observed the flight of the burglar. Morgan told Graf that the burglar was carrying two VCRs and a black canvas bag. Graf conducted an investigation at the scene of the crime and discovered an empty drawer lying on the floor with a few items of jewelry scattered nearby; he deduced that items of jewelry were also taken by the burglar.

■ The burglar did not get far with his loot. Based on information provided by Morgan to the police, a car driven by William Henman was stopped by a highway patrol officer near Billings. Henman and his vehicle were taken to the Yellowstone County Sheriff's Office where Morgan positively identified Henman as the burglar. After obtaining the consent of Henman's parole officer, Deputy Graf searched Henman's vehicle.[1] He found two VCRs and a black canvas bag. Graf searched the partially unzipped canvas bag, where he discovered the stolen jewelry along with a .45 caliber pistol and a silencer.

The district court determined that Rambo had no legitimate expectation of privacy in the bag after it was stolen and, even if he did, the search of the bag was reasonable under the Fourth Amendment. On appeal, the United States does not argue that Rambo lacked a legitimate expectation of privacy in the bag. Notwithstanding that concession,

---

1. Rambo does not dispute the legality of Deputy Graf's search of the vehicle. This is unsurprising, as a probation and parole officer is vested with authority to consent to a search of a parolee's vehicle. *State v. Burke,* 235 Mont. 165, 766 P.2d 254, 257 (1988). In any case, it is doubtful that Rambo has standing to object to the search of Henman's property.

the United States still contends that the search was constitutional. Rambo, of course, did not consent to the search of his bag, so we must determine whether Deputy Graf's search of constitutionally protected property was reasonable.

The Fourth Amendment proscribes unreasonable searches. As a general rule, searches conducted without a warrant and probable cause are presumptively unreasonable, subject to a number of "specifically established and well-delineated" exceptions. *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). *But see United States v. Barona,* 56 F.3d 1087, 1092 n. 1 (9th Cir.1995) ("[r]easonableness, not probable cause, is undoubtedly the touchstone of the Fourth Amendment."). One such exception is the so-called automobile exception. *California v. Acevedo,* 500 U.S. 565, 566, 111 S.Ct. 1982, 1983, 114 L.Ed.2d 619 (1991). Under this doctrine, as developed by the Supreme Court in *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982) and *Acevedo,* "[t]he police may search an automobile and the containers within it [without a warrant] where they have probable cause to believe contraband or evidence is contained." 500 U.S. at 580, 111 S.Ct. at 1991.

Deputy Graf's concededly proper search of Henman's vehicle revealed the presence of stolen property including Rambo's VCRs and black canvas bag. Deputy Graf had ample probable cause to believe that the missing jewelry might be in the bag. Under *Acevedo,* it was completely reasonable for Graf to search the bag to look for the jewelry; indeed he found the jewelry there. No warrant or consent was required. Once Graf had legitimately searched the bag, the seizure of the firearm and silencer was justified under the plain view doctrine. *See Horton v. California,* 496 U.S. 128, 133–34, 110 S.Ct. 2301, 2306, 110 L.Ed.2d 112 (1990).[2]

Rambo's reliance on our decision in *United States v. Welch,* 4 F.3d 761 (9th Cir.1993) is misplaced. In *Welch,* we concluded that one occupant of a vehicle did not have actual authority to consent to a search of another party's property, and that a reasonable officer would not have concluded that the occupant had apparent authority to consent to the search. Deputy Graf did not rely on the Probation Officer's consent to search Rambo's bag. Rather, it was the existence of probable cause that justified the search of the bag. *Welch* does not apply.

### III

Rambo next argues that the district court erred in denying his motion to suppress statements he made in a telephone call to Musselshell County Sheriff Paul Smith soon after the discovery of the firearm and silencer. Rambo contends that Sheriff Smith assured him that he could speak off the record, or at least failed to make clear that the conversation was not off the record, and thus his statements should be deemed involuntary.[3] We disagree.

We review for clear error the district court's factual findings regarding the voluntariness of a defendant's statement, but we review de novo the district court's ultimate conclusion that a statement was made voluntarily. *Arizona v. Fulminante,* 499 U.S. 279, 287, 111 S.Ct. 1246, 1252, 113 L.Ed.2d 302 (1991); *United States v. Wolf,* 813 F.2d 970, 974 (9th Cir.1987).

The district court heard inconsistent testimony from Rambo and Sheriff Smith regarding what Smith told Rambo. The court's finding that Smith was the more credible witness was not clearly erroneous. Smith testified that Rambo initiated the telephone conversation and asked if the two could "talk ... in confidence." Smith responded that "it depended on what it [the conversation] was about." Rambo proceeded to make several incriminating statements re-

---

2. Because we conclude that the search of the bag and seizure of the firearm and silencer were reasonable under the automobile exception and plain view doctrine, we need not address the United States' alternative contention that the

search of the bag was justified as an inventory search.

3. Rambo does not argue that he was subjected to custodial interrogation.

garding his knowledge of the illegal nature of his firearm.

Rambo's statements to Sheriff Smith were not coerced. No promise of confidentiality or offer of immunity induced Rambo to discuss the illegal nature of the firearm. Sheriff Smith's statement to Rambo merely indicated that he might treat the conversation as confidential. Rambo proceeded at his own risk. Applying the totality of the circumstances test, *Fulminante,* 499 U.S. at 284–86, 111 S.Ct. at 1250–52, we have no difficulty determining that Rambo acted voluntarily when he spoke to Sheriff Smith. The district court committed no error in allowing Rambo's statements to be introduced into evidence.[4]

### IV

■ Rambo next contends that the district court erred by denying his motion to dismiss both counts of the indictment because of alleged government misconduct. He argues that members of the Musselshell County Sheriff's Department destroyed potentially exculpatory evidence in bad faith when they fired multiple rounds using Rambo's firearm and silencer while conducting test firing. We review this issue de novo, *United States v. Restrepo,* 930 F.2d 705, 712 (9th Cir.1991), and we agree with the district court.

■ Unless a criminal defendant can demonstrate "bad faith on the part of the police," the failure of the police to preserve "potentially useful evidence" does not constitute a denial of due process of law. *Arizona v. Youngblood,* 488 U.S. 51, 58, 109 S.Ct. 333, 337, 102 L.Ed.2d 281 (1988). Rambo provided no evidence of bad faith on the part of the deputies. Agent Flickinger of the Bureau of Alcohol, Tobacco & Firearms instructed the Sheriff's Office personnel to test fire the firearm in order to determine if it was fully automatic. Although the deputies fired more rounds than were necessary, that indicates only poor judgment, not bad faith. The deputies' use of the silencer, which was contrary

to their instructions, was equally devoid of bad faith.

Rambo argues that the firearm and silencer, if they had not been fired, might have revealed the absence of fingerprints. This possibility, however, is irrelevant in light of the lack of a showing of bad faith. Also irrelevant is Rambo's contention that the firearm and silencer might have revealed that they had never been fired, negating the requirement that Rambo know that the firearm was fully automatic and that the silencer functioned. A government expert testified, however, that a person could know the nature of the firearm and silencer without firing them.

### V

Rambo next argues that the district court erred in denying his motion for a judgment of acquittal as to both counts. This argument is without merit.

■ We review a motion for judgment of acquittal under the same standard applied to a challenge to the sufficiency of the evidence. *United States v. Mullins,* 992 F.2d 1472, 1478 (9th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 2997, 125 L.Ed.2d 691 (1993), —— U.S. ——, 114 S.Ct. 556, 126 L.Ed.2d 457 (1993). Sufficient evidence exists to support a conviction if "reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Bishop,* 959 F.2d 820, 829 (9th Cir.1992) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)).

■ Rambo first argues that the government presented insufficient evidence that he knowingly possessed the fully automatic firearm and unregistered silencer on February 25, 1993. He is wrong. The burglar, Henman, testified that he removed the black canvas bag from Rambo's house on the day in question. Rambo's brother-in-law, Morgan, saw Henman carrying the bag out of the house. When Henman was apprehended a

---

4. Because we have already concluded that the search of Rambo's bag was reasonable, we must necessarily reject Rambo's contention that the

statements were inadmissible as a "fruit" of prior illegality. *See Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

short time later, the firearm and silencer were found in the only black canvas bag located in the automobile. The bag also contained Rambo's jewelry. Finally, Rambo expressed concern to Sheriff Smith about the illegal weapon contained in the canvas bag. This evidence was more than sufficient to allow a rational trier of fact to find that Rambo knowingly possessed the firearm and silencer.

■■■ Rambo also contends that the government presented insufficient evidence regarding whether he knew the real nature of the silencer. In order for a defendant to be convicted of possession of an unregistered silencer, the defendant must know that the particular item was in fact a silencer. *See Staples v. United States,* —— U.S. ——, ——, 114 S.Ct. 1793, 1802, 128 L.Ed.2d 608 (1994). The government's expert witness testified that the design of a silencer is sufficient to make someone aware of its nature; proof of actual use is not required. A rational trier of fact could draw the conclusion from the evidence that Rambo must have known that the item at issue was a silencer.

## VI

■■ Lastly, Rambo argues that the district court erred in denying his motion in limine to exclude evidence relating to the partially obliterated serial number on the firearm. We review a district court's denial of a motion in limine for abuse of discretion. *United States v. Wallace,* 848 F.2d 1464, 1472 (9th Cir.1988).

■■ Although the government had initially charged Rambo with possession of a firearm with a partially obliterated serial number, it successfully moved to dismiss that count prior to trial. Nevertheless, evidence of the serial number was introduced at trial in two respects. First, the firearm was introduced into evidence and the partially obliterated number was, of necessity, visible to the jury. Second, the United States attempted to negate Rambo's argument that he was attempting to register the firearm, and

had purchased the weapon from a now deceased dealer who had failed to give Rambo the appropriate paperwork. The obliterated serial number was evidence that Rambo's story was false; he could not have purchased the gun legitimately.

We perceive no abuse of discretion. The admission of the firearm into evidence was obviously essential to the government's case. Furthermore, the government is correct that the obliterated serial number made the jury more likely to disbelieve Rambo's testimony about how he acquired the firearm. *See* Fed.R.Evid. 401 ("[r]elevant evidence" is evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable ... than it would be without the evidence.").

AFFIRMED.