**UNITED STATES, Plaintiff,**

v.

**Robin SAYA, Robbie Sylva, Frank Burke, Defendants.**

**Criminal No. 95–01065 ACK.**

United States District Court,
D. Hawai'i.

Jan. 10, 1997.

*ORDER DENYING DEFENDANT ROBBIE SYLVA'S MOTION TO SUPPRESS STATEMENTS MADE TO KURT HEILBRON*

KAY, Chief Judge.

### FACTUAL BACKGROUND

This Order concerns two conversations in April, 1996 between Defendant Robbie Sylva ("Sylva") and Kurt Heilbron ("Heilbron"). In early April 1996, Sylva telephoned Heilbron at his residence and told him that if anyone asked that Heilbron should say Sylva paid $7,000 for a Ford Mustang when he allegedly paid $19,000 for the car. Sylva also telephoned Heilbron on April 17, 1996 after Heilbron asked a mutual acquaintance to ask Sylva to call him.

On January 7, 1997, the Court held a hearing on whether these conversations violated Sylva's Fifth Amendment Due Process rights, Sylva's Fifth Amendment right not to incriminate himself, and Sylva's Sixth Amendment right to counsel. *See e.g. Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

### DISCUSSION

The Court will discuss separately each constitutional right purportedly violated. As a threshold issue, however, the Court finds, and the government concedes, that Heilbron was working at the behest of the FBI and thus was a state actor.

### I. *The Fifth Amendment Right Not to Incriminate Oneself*

The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." The Supreme Court has held that this right "is fully applicable during a period of custodial interrogation." *Miranda v. Arizona,* 384 U.S. 436, 478–79, 86 S.Ct. 1602, 1629–30, 16 L.Ed.2d 694 (1966). As stated in the seminal decision and confirmed ever since, *Miranda* warnings are required if and only if a defendant is placed in "custody" and then "interrogated." *Miranda v. Arizona,* 384 U.S. 436, 478–79, 86 S.Ct. 1602, 1629–30, 16 L.Ed.2d 694 (1966); *Stansbury v. California,* 511 U.S. 318, 321–22, 114 S.Ct. 1526, 1528, 128 L.Ed.2d 293 (1994). If *Miranda* warnings were required but not given, any statements made during the "custodial interrogation" are inadmissible against the defendant in the prosecution's case in chief. *Miranda,* 384 U.S. at 476, 86 S.Ct. at 1628–29; *Harris v. New York,* 401 U.S. 222, 224, 91 S.Ct. 643, 645, 28 L.Ed.2d 1 (1971).

An individual is in "custody" for purposes of Miranda when, based on the totality of the circumstances, a reasonable innocent person in Defendant's position would conclude that he was not free to leave. *See, e.g., United States v. Gregory,* 891 F.2d 732, 735 (9th Cir.1989) (no custody where defendant consented to be interviewed, the interview took place in his house and in the presence of his wife, no coercion or force was used, and the interview lasted only a few minutes); *United States v. Wauneka,* 770 F.2d 1434, 1438 (9th Cir.1985) (custody where defendant was transported to the police station, questioned in an interrogation room by four different officers for over an hour, and told that he matched the description of the perpetrator and had supplied information only the perpetrator would know).

Whether an individual was in custody is an objective inquiry. Neither the individual's subjective belief that he was not free to leave nor the interrogating officer's subjective view that the individual being questioned is a suspect is relevant. *Stansbury v. California,* 511 U.S. 318, 321–22, 114 S.Ct. 1526, 1528, 128 L.Ed.2d 293 (1994); *United States v. Booth,* 669 F.2d 1231, 1235 (9th Cir.1981). Moreover, "the fact that the individual is in a 'coercive environment' is not controlling. Every police interview has coercive aspects...." *United States v. Hudgens,* 798 F.2d 1234, 1236 (9th Cir.1986); *California v. Beheler,* 463 U.S. 1121, 1124–25, 103 S.Ct. 3517, 3519–20, 77 L.Ed.2d 1275 (1982).

The Ninth Circuit has identified five factors to be considered in determining whether an individual was in custody for purposes of *Miranda:*

1.  the language used by the officers in summoning the person interviewed;

2.  the physical characteristics of the place where the interrogation occurred;

3. the degree of pressure applied to detain the individual;

4. the duration of the detention;

5. the extent to which the person was confronted with evidence of his guilt.

*United States v. Gregory,* 891 F.2d 732, 735 n. 3 (9th Cir.1989) (citing *United States v. Booth,* 669 F.2d 1231, 1235 (9th Cir.1981)).

Because whether an individual is in custody is determined under the totality of the circumstances, no one factor is determinative. The district court's determination whether a defendant was in custody is a factual finding that is reviewed under a clearly erroneous standard. *Booth,* 669 F.2d at 1236.

### A. *Sylva not entitled to Miranda warnings because not in custody*

■ Clearly, under these factors, Sylva was not in custody for either conversation. Sylva had the freedom to move anywhere on this island when both conversations occurred. Consequently, *Miranda* warnings were not required and Sylva's right not to incriminate himself was not violated.

### II. *The Fifth Amendment Due Process Right*

The Fifth Amendment guarantees that "no person shall be deprived of life, liberty, or property, without due process of law." A defendant's involuntary statement violates this provision. To be involuntary, however, a confession must involve "the crucial element of police overreaching.'" *Colorado v. Connelly,* 479 U.S. 157, 167, 107 S.Ct. 515, 521–22, 93 L.Ed.2d 473 (1986). In deciding the voluntariness of a confession, "the question to be faced in each case is whether the defendant's will was overborne when he confessed." *United States v. Jenkins,* 938 F.2d 934, 938 (9th Cir.1991).

### A. *Sylva's conversations with Heilbron were voluntary and did not violate his Due Process rights*

■ The government has met its burden in proving that Sylva's "confession" was vol-

untary.[1] With regard to the first conversation, Sylva instigated the phone call. The government did not coerce Sylva to call, nor did they encourage him to call. Sylva made the call on his own free will.

The Ninth Circuit recently confronted a similar, but more egregious, situation and held that the confession was voluntary. *See United States v. Rambo,* 74 F.3d 948 (9th Cir.1996). In *Rambo,* the district court found that Defendant called the Sheriff and "asked if the two could 'talk .... in confidence.'" *Id.* at 953. The Sheriff "responded that it depended on what it[the conversation] was about.'" *Id.* Relying on what he believed to be an assurance of confidentiality, the Defendant made several incriminating statements. *Id.* at 953–4. Reviewing the lower court's decision to allow the statement de novo, the Ninth Circuit affirmed. *Id.* It reasoned that:

> [the defendant's] statements to the Sheriff were not coerced. No promise of confidentiality or offer of immunity induced [the defendant] to discuss the illegal nature of the firearm. Sheriff Smith's statement to Rambo merely indicated that he might treat the conversation as confidential. Rambo proceeded at his own risk.

*Id.* at 954. This rationale applies equally to Sylva. The government did nothing to induce Sylva to make his first conversation, rather he made the call on his own and "at his own risk." Unlike *Rambo,* moreover, Sylva received no assurances that what he said on the phone would not be used against him. Accordingly, the Court finds that the Defendant's Due Process rights were not violated by the early-April discussion.

■ The Court also finds that Sylva's statements in the April 17, 1996 conversation were voluntary. Although Sylva was asked to call the Heilbron, Sylva was not coerced to do so. *See Colorado v. Connelly,* 479 U.S. 157, 167, 107 S.Ct. 515, 521–22, 93 L.Ed.2d 473 (1986) ("we hold that coercive police activity is a necessary predicate to the finding

---

**1.** Under *Lego v. Twomey,* 404 U.S. 477, 489, 92 S.Ct. 619, 626–27, 30 L.Ed.2d 618 (1972), the government has the burden to prove by a pre-

ponderance of the evidence that a confession was voluntary.

that a confession is not 'voluntary' within the meaning of the Due Process Clause"). Nor did Heilbron's request to call overcome Sylva's will. Rather the Court finds Sylva's call was "the product of essentially free and unconstrained choice by its maker." *United States v. Jenkins*, 938 F.2d 934, 938 (9th Cir.1991). Accordingly, the Court finds that Sylva's phone conversations were voluntary.

### III. *The Sixth Amendment Right to Counsel*

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend VI. The Sixth Amendment right to counsel attaches "at or after the initiation of adversary judicial criminal proceedings." *United States v. Gouveia*, 467 U.S. 180, 188, 104 S.Ct. 2292, 2297, 81 L.Ed.2d 146 (1984). The right to counsel gives the defendant "the right to rely on counsel as a 'medium' between him and the State." *Maine v. Moulton*, 474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985). Any statements intentionally elicited from the defendant in the absence of counsel may violate the defendant's Sixth Amendment right to counsel and be suppressed. *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). Recently, however, the Supreme Court has limited the right so as to be offense specific. *McNeil v. Wisconsin*, 501 U.S. 171, 175, 111 S.Ct. 2204, 2207, 115 L.Ed.2d 158 (1991). "In other words, if a defendant is arraigned on one charge, then the sixth amendment right to counsel attaches to that charge but not to a different charge for which the defendant has not yet been arraigned." *Hendricks v. Vasquez*, 974 F.2d 1099, 1105 (9th Cir.1992).

A. *The Court finds that the conversations did not violate Sylva's Sixth Amendment Rights because they did not concern the specific offense covered by his Sixth Amendment Right to Counsel.*

█ The government concedes that Sylva's Sixth Amendment Right to Counsel had attached at the time of these conversations. But the government argues that the conversations did not concern the drug conspiracy charge and thus did not violate Sylva's Sixth Amendment rights. *See McNeil*, 501 U.S. at 175, 111 S.Ct. at 2207. The Court agrees.

Here, Sylva is charged with conspiracy to distribute drugs and obstruction of justice concerning possible money laundering offenses. These are two separate offenses with differing elements of proof. In addition, the alleged money laundering offense occurred in August 1995 and involved Heilbron and Sylva. The drug offense, however, occurred in November, 1995 and did not involve Heilbron at all. In short, "the place, time, and persons involved were .... different" for the two offenses. *United States v. Hines*, 963 F.2d 255, 257 (9th Cir.1992) (finding no Sixth Amendment violation when federal agents questioned defendant about offense similar to offense which defendant was being prosecuted for in state court). Therefore, the Court finds no Sixth Amendment violation.[2]

█ This holding would not change if the obstruction of justice offense concerned the drug conspiracy count. The Ninth Circuit has found that: (1) a substantive crime; and (2) criminal efforts to avoid conviction for the substantive crime are different offenses for purposes of the Sixth Amendment. *See Hendricks v. Vasquez*, 974 F.2d 1099 (9th Cir. 1992). In *Hendricks*, the defendant was arrested in Dallas for unlawful flight from

---

**2.** At the hearing, Sylva also argued that the obstruction investigation violated his Sixth Amendment Right to Counsel for the forfeiture count, Count II of the Third Superseding Indictment. The Court rejects this argument. The forfeiture count only involves property used "to commit or to facilitate the commission" of the drug conspiracy charge. In this case, the thrust of the money laundering offenses—the Ford Mustang—did not concern property used to commit or facilitate the commission of the drug conspiracy charge. The

Court also notes that a forfeiture count is a civil proceeding for which there may be no Sixth Amendment Right to Counsel. *See United States v. Sardone*, 94 F.3d 1233 (9th Cir.1996) (holding that no Sixth Amendment right to counsel attaches in forfeiture because imprisonment is not authorized by any of the civil forfeiture statutes). In either case, Heilbron's conversations with Sylva did not violate Sylva's Sixth Amendment Right to Counsel.

**1402**

homicide charges in California and arraigned on that charge thereby invoking his Sixth Amendment Right to Counsel. *Id.* at 1103. Defendant was eventually flown back to San Francisco and questioned about the underlying murder charges, apparently without advice of counsel. *Id.* at 1104. During questioning, the defendant made two separate confessions concerning five murders. *Id.*

The defendant challenged these statements arguing that his Sixth Amendment Right to Counsel had attached for his flight charge and thus his subsequent statements were made without advice of counsel. *Id.* The Ninth Circuit rejected defendant's argument stating:

> Although not wholly unrelated, the two crimes have totally independent elements. The murders were separate incidents from the flight; they were neither 'inextricably intertwined' with the flight charge nor did they arise from the same conduct.

*Id.* Thus, even when the effort to avoid conviction for an offense and the offense itself are the basis for the Sixth Amendment challenge, the Ninth Circuit has held that they are separate offenses. Applying the *Hendricks* holding to the instant case, the obstruction charge could concern the drug conspiracy (which the Court finds that it does not), yet the two would not constitute the same offense for purposes of the Sixth Amendment. Under even the most generous reading of the facts, therefore, Heilbron's contact with Sylva concerned a separate offense. Accordingly, the Court finds that Sylva's Sixth Amendment rights were not violated.

### CONCLUSION

For the foregoing reasons, the Court ALLOWED the government to question Heilbron on his two conversations with Defendant Sylva in April, 1996.

IT IS SO ORDERED.