**UNITED STATES of America,
Plaintiff,**

v.

**Buford O'Neal FURROW,
Jr., Defendant.**

**No. Cr 99–838(A) NM.**

United States District Court,
C.D. California.

Sept. 19, 2000.

Barbara Bernstein, Special Asst. U.S. Attorney, Carolyn Wittcoff, Michael J. Gennaco, Michael Terrell, Asst. U.S. Attorneys Criminal Division, Los Angeles, CA, for plaintiff.

Marilyn E. Bednarski, Seal Kennedy, William H. Forman, Office of the Federal Public Defender, Los Angeles, CA, Judy C. Clarke, Office of the Federal Public Defender, Spokane, WA, for defendant.

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS COUNTS 2 THROUGH 16 OF THE INDICTMENT BECAUSE THE UNDERLYING STATUTES ARE UNCONSTITUTIONAL

MANELLA, District Judge.

### I. INTRODUCTION

Criminal defendant Buford O'Neal Furrow, Jr. ("Defendant") has been charged in a sixteen-count indictment filed on December 2, 1999 for the alleged murder of a U.S. postal worker, Joseph Ileto, the alleged shooting of five individuals at the North Valley Jewish Community Center ("NVJCC"), and various gun possession offenses. Pending before the court is Defendant's motion to dismiss counts 2 through 16 of the indictment because the underlying statutes are unconstitutional. The statutes at issue in this motion are 18 U.S.C. § 245(b)(2)(F) (violent interference, on account of race or religion, with enjoyment of the services, facilities, and privileges afforded by a place of exhibition or entertainment which serves the public); 18 U.S.C. § 245(b)(4)(A) (violent interference, on account of race or religion, with enjoy-

**1180**

ment of right to federal employment); 18 U.S.C. § 924(c) (use of a firearm during commission of a crime of violence); 18 U.S.C. § 922(g) (possession by a convicted felon of a firearm); 18 U.S.C. § 922(*o*) (possession of a machinegun); and 26 U.S.C. § 5861 (possession of an unregistered firearm).

## II. DISCUSSION

### A. *Legal Framework*

Defendant maintains that neither the 14th Amendment nor the Commerce Clause of Article I confers on Congress the power to enact 18 U.S.C. §§ 245, 924(c), 922(g), 922(*o*), and 26 U.S.C. § 5861. Mot., at 5. Because the government does not invoke Congress's Fourteenth Amendment authority in its defense of the contested statutes, the court focuses its analysis on Defendant's Commerce Clause challenge. Opp., at 3.

■ The Supreme Court recently stated that "[d]ue respect for the decisions of a coordinate branch of government demands that we invalidate a congressional enactment only upon a clear showing that Congress has exceeded its constitutional bounds." *United States v. Morrison,* 529 U.S. 598, 120 S.Ct. 1740, 1748, 146 L.Ed.2d 658 (2000). Accordingly, courts apply a "presumption of constitutionality" when reviewing challenges to congressional enactments. *Id.*

"The powers of the legislature are defined and limited [by the Constitution]." *Marbury v. Madison,* 1 Cranch 137, 176, 2 L.Ed. 60 (1803). The Commerce Clause of the U.S. Constitution delegates to the federal government the power "to regulate Commerce with Foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const., art. I, § 8, cl. 3. The 20th century has witnessed a gradual judicial expansion of Congress's Commerce Clause authority. In two recent decisions—*United States v. Lopez,* 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d

626 (1995), and *United States v. Morrison,* 529 U.S. 598, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000)—the Supreme Court defined the outer limits of that authority.

In *Lopez* and *Morrison,* the Supreme Court invalidated two federal criminal statutes as exceeding Congress's Commerce Clause authority and announced a conceptual framework for courts to employ in evaluating Commerce Clause challenges.[1] In *Lopez,* the Supreme Court identified three broad categories of activity that Congress may regulate under its commerce power. First, Congress may regulate the use of the channels of interstate commerce. Second, Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities. Finally, Congress' commerce authority includes the power to regulate those activities having a substantial relation to interstate commerce, i.e., those activities that substantially affect interstate commerce.

514 U.S. at 558–59, 115 S.Ct. 1624 (citations omitted). "[T]hese three bases of authority are analytically distinct." *United States v. Pappadopoulos,* 64 F.3d 522, 526 (9th Cir.1995) (citing *United States v. Robertson,* 514 U.S. 669, 115 S.Ct. 1732, 131 L.Ed.2d 714 (1995)). Both *Lopez* and *Morrison* were decided under the third category.

The Court's holding in *Lopez* rested on three grounds: 1) the Gun–Free School Zones Act ("GFSZA") was "a criminal statute that by its terms had nothing to do with 'commerce' or any sort of economic enterprise"; 2) "[the GFSZA] contain[ed] no jurisdictional element which would ensure, through case-by-case inquiry, that the firearm possession in question affect[ed] interstate commerce"; and 3) there were "no congressional findings [that] would enable [the Court] to evaluate the legislative judgment that the activity in

1. In *Lopez,* the Court struck down the Gun–Free School Zones Act ("GFSZA"). In *Morri*-son, the Court struck down the Violence Against Women Act ("VAWA").

question substantially affected interstate commerce." 514 U.S. at 561–63, 115 S.Ct. 1624. The Court rejected the government's "costs of crime" and "national productivity" theories as imposing virtually no limits on federal legislative authority:

> Under the theories that the Government presents in support of § 922(q), it is difficult to perceive any limitation on federal power, even in areas such as criminal law enforcement or education where States historically have been sovereign. Thus, if we were to accept the Government's arguments, we are hard pressed to posit any activity by an individual that Congress is without power to regulate.

*Id.* at 564, 115 S.Ct. 1624.

*Morrison* affirmed and elaborated on the principles announced in *Lopez.* Unlike the GFSZA, the Violence Against Women Act ("VAWA") was supported by abundant findings concerning the impact of gender-motivated violence on commerce. However, "the existence of congressional findings is not sufficient, by itself, to sustain the constitutionality of Commerce Clause legislation." *Morrison,* 120 S.Ct. at 1752. The Court proceeded to dismissed the congressional findings as relying primarily on the national productivity and costs of crime theories the Court had rejected in *Lopez:* "If accepted, petitioners' reasoning would allow Congress to regulate any crime as long as the nationwide, aggregated impact of that crime has substantial effects on employment, production, transit, or consumption," thereby potentially "obliterat[ing] the Constitution's distinction between national and local authority." *Id.* at 1752–53.

"The Constitution requires a distinction between what is truly national and what is truly local." *Id.* at 1754. The statutes at issue in *Lopez* and *Morrison* were found unconstitutional because they regulated activity that had "only a tenuous connection to commerce and infringe[d] on areas of traditional state concern." *Gibbs v. Babbitt,* 214 F.3d 483, 491 (4th Cir.2000). With these general principles in mind, the court turns to the particular issues presented by this case.

## B. *Application*

### 1. *18 U.S.C. § 245*

■ Counts 3 through 8 of the First Superseding Indictment charge Defendant with violations of 18 U.S.C. § 245, which subject to criminal penalties anyone who "knowingly, willfully, and unlawfully, by force or threat of force willfully injures, intimidates or interferes with" federally protected rights.[2] The federally protected rights at issue here are 1) the right to be free from injury, intimidation, or interference because of one's race, color, religion, or national origin and because one is "enjoying the goods, [or] services ... of any [ ] place of exhibition or entertainment which serves the public,"[3] and 2) the right to "participat[e], without discrimination on account of race, color, religion or national origin, in [the enjoyment of employment by an agency of the United States]."[4] The government urges the court to sustain the statute as a regulation of "use of the channels of interstate commerce,"[5] and "activities that substantially affect interstate commerce." Opp., at 16; *Lopez,* 514 U.S. at 558–59, 115 S.Ct. 1624. Because the court concludes that Section 245 regulates activities having a substantial effect on interstate commerce, it does not address whether the statute also governs the channels of interstate commerce.

---

2. For a description of the structure of Section 245, see *United States v. Lane,* 883 F.2d 1484, 1490 (10th Cir.1989).

3. 18 U.S.C. § 245(b)(2)(F).

4. 18 U.S.C. § 245(b)(4)(A).

5. The phrase "channels of interstate commerce" has been defined as "navigable rivers, lakes, and canals of the United States; the interstate railroad track system; the interstate highway system; ... interstate telephone and telegraph lines; air traffic routes; television and radio broadcast frequencies." *Gibbs,* 214 F.3d at 490–91 (quoting *United States v. Miles,* 122 F.3d 235, 245 (5th Cir.1997)).

Defendant challenges the constitutionality of Section 245 on the ground that the Commerce Clause does not empower Congress to regulate private, non-economic conduct. Mot., at 6. The government attempts to distinguish Section 245 from the statutes that have been found to exceed Congress's Commerce Clause power on three grounds: (1) it regulates economic conduct affecting commerce; (2) it criminalizes only racially or religiously discriminatory conduct intended to interfere with an individual's federally protected rights; and (3) it is "part of a larger, distinctively federal, statutory regime." Opp., at 13, 20.

### a. *Economic Nature of Regulated Activity*

Courts have adopted and continue to use a broad definition of economic activity. "Indeed, a cramped view of commerce would cripple a foremost federal power and in so doing would eviscerate national authority." *Gibbs*, 214 F.3d at 491 (upholding Fish and Wildlife Service regulation under Commerce Clause). Although the outcome in *Lopez* hinged on the "noneconomic, criminal nature of the conduct at issue," the Supreme Court has never suggested that Congress may not regulate *any* criminal activity. *Morrison*, 120 S.Ct. at 1750. Rather, Congress violates the principles of federalism when it attempts to regulate intrastate violence with only an attenuated connection to interstate commerce. *Id.* at 1754. Defendant maintains that Section 245 regulates "violent criminal acts, not an economic endeavor." Reply, at 2. While the conduct prohibited is violent crime, Section 245 does not reach the entire universe of violent crime, but only the subset of violent acts that impinge on federally protected rights.

In rebuffing challenges to the constitutionality of the Civil Rights Act, the Supreme Court long ago accepted congressional findings that racial discrimination had a "direct and adverse effect on the free flow of interstate commerce" and therefore posed a "national commercial problem of the first magnitude." *Katzenbach v. McClung*, 379 U.S. 294, 299–300, 305, 85 S.Ct. 377, 13 L.Ed.2d 290 (1964); *cf.* *Heart of Atlanta Motel v. United States*, 379 U.S. 241, 257, 85 S.Ct. 348, 13 L.Ed.2d 258 (1964) (upholding the constitutionality of public accommodations provisions of Civil Rights Act of 1964 under the Commerce Clause, based on "overwhelming evidence of the disruptive effect that racial discrimination has had on commercial intercourse").[6] It follows that violent conduct that interferes with the rights guaranteed by the Civil Rights Act necessarily implicates commerce. Congress so found in enacting Section 245, when it concluded that violence affecting "[f]ederal rights to nondiscriminatory treatment . . . must be broadly prohibited if the enjoyment of those rights is to be secured. Legislation that regulates intrastate commerce in order to assure the effective regulation of interstate commerce is commonplace, and its constitutionality is beyond serious debate." S.Rep. No. 721, at 6–7 (citing Supreme Court cases), *quoted in Lane*, 883 F.2d at 1490 n. 10. Congress could rationally conclude that violent interference with the right of access to facilities that serve the public and with the right to apply for and hold federal employment has a substantial connection to interstate commerce.[7]

---

6. Both *Katzenbach* and *Heart of Atlanta* were cited with approval in *Lopez* and *Morrison*.

7. The enforcement provisions embodied in Section 245 are arguably broader than the corresponding provisions of the Civil Rights Act. However, "[w]hen Congress enacts a statute under its commerce power, it is not constitutionally obligated to require proof beyond a reasonable doubt that each individual act in the class of activities regulated had an effect on interstate commerce." *Lane*, 883

F.2d at 1493. Moreover, the legislative history of Section 245 shows that Congress not only contemplated, but actually intended, such a result: "In dealing with violent interference with the right to be free from racial discrimination in interstate activities it is reasonable to conclude that effective regulation requires reaching local activities as well." *Id.* at 1490 n. 11 (quoting H.R.Rep. No. 473, at 3–5); *cf.* *Heart of Atlanta*, 379 U.S. at 258, 85 S.Ct. 348 (upholding congressional author-

Application of the aggregation principle announced in *Wickard v. Filburn*, 317 U.S. 111, 128, 63 S.Ct. 82, 87 L.Ed. 122 (1942), confirms this conclusion.[8] *Compare Lopez*, 514 U.S. at 567, 115 S.Ct. 1624 ("The possession of a gun in a local school zone is in no sense an economic activity that might, through repetition elsewhere, substantially affect any sort of interstate commerce."), *with Gibbs v. Babbitt*, 214 F.3d 483, 492 (4th Cir.2000) ("[I]ndividual takings [of red wolves on private property in violation of disputed federal regulation] may be aggregated for purposes of Commerce Clause analysis."), *and Fry v. United States*, 421 U.S. 542, 547, 95 S.Ct. 1792, 44 L.Ed.2d 363 (1975) (Wage increases to state employees could substantially affect interstate commerce by "inject[ing] millions of dollars of purchasing power into the economy and [ ] exert[ing] pressure on other segments of the work force to demand comparable increases.).

The aggregate effect on interstate commerce of multiple violations of Section 245 would be substantial. Failure to enforce the right to be free of racial and religious discrimination as proscribed by Section 245 would affect the ability of countless individuals to enjoy the economic benefits of federal employment, as well as the broad array of commercial services offered to the public. To work and be compensated for one's services is the essence of economic activity. Deprivation of the right to enjoy the services of public places of exhibition and entertainment affects the commercial activities of both those who would utilize those services and those who would profit from them. That the conduct regulated by Section 245 is economic activity affecting commerce cannot be gainsaid. *See United States v. Lane*, 883 F.2d 1484, 1493 ("[I]n an effort to rid interstate com-

merce of the burdens imposed on it by racial discrimination Congress may ... prohibit a person from denying another person equal employment opportunities because of his race by violently injuring or killing him."); *cf. EEOC v. Ratliff*, 906 F.2d 1314, 1317 (9th Cir.1990) (in employment discrimination action brought under Civil Rights Act, local fitness club fell within a class of activities that, as a whole, affect commerce).

### b. Federal Regulatory Scheme

In observing that the GFSZA was unrelated to " 'commerce' or any sort of economic enterprise, however broadly one might define those terms," the *Lopez* court was careful to note that the GFSZA "is not an essential part of a larger regulation of economic activity, in which the regulatory scheme would be undercut unless the intrastate activity were regulated." 514 U.S. at 561, 115 S.Ct. 1624; *cf. Wickard v. Filburn*, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942) (regulation of homegrown wheat cultivated for personal consumption was part of a larger statutory scheme to increase wheat prices). By contrast, the statutory provisions at issue here are part of a comprehensive federal body of civil rights legislation aimed at eradicating discrimination found to have an adverse impact on interstate commerce. *See United States v. Lane*, 883 F.2d 1484, 1490 (10th Cir.1989) (discussing legislative history of Section 245). In enacting Section 245, Congress specifically found that "if racial violence directed against activities closely related to those protected by Federal antidiscrimination legislation is permitted to go unpunished, the exercise of the protected activities will be deterred." *Id.* at 1490 n. 10 (quoting S.Rep. No. 721 at 4, 6–7).

ity to regulate operations of a "purely local character" which "might have a substantial and harmful effect upon [interstate] commerce").

8. "Even activity that is purely intrastate in character may be regulated by Congress, where the activity, combined with like con-

duct by others similarly situated, affects commerce among the States...." *Fry v. United States*, 421 U.S. 542, 547, 95 S.Ct. 1792, 44 L.Ed.2d 363 (1975) (citing *Heart of Atlanta*, 379 U.S. at 255, 85 S.Ct. 348; *Wickard v. Filburn*, 317 U.S. 111, 127, 128, 63 S.Ct. 82, 87 L.Ed. 122 (1942)).

The provisions of Section 245 at issue here enforce the rights guaranteed by Tide II (nondiscriminatory access to public accommodations) and Title VII (nondiscriminatory enjoyment of federal employment) of the Civil Rights Act of 1964. Congress could rationally find that a federal criminal prohibition of violent acts intended to interfere with access to public services and federal employment was necessary to secure the federal rights created by Title II and Title VII pursuant to its Commerce Clause power. *See Lane,* 883 F.2d at 1492 (upholding Section 245 under Commerce Clause, as applied to religiously motivated killing of talk show host engaged in private employment). As the contested provisions form an integral part of the federal statutory regime to protect individuals from racial and religious discrimination, invalidating them would, to an unprecedented degree, cripple the power of the federal government to promulgate laws enforcing such civil rights.

In *Gibbs v. Babbitt,* 214 F.3d 483 (4th Cir.2000), the Fourth Circuit upheld, under the Commerce Clause, federal regulations limiting the taking of red wolves on private property, as an integral part of a federal scheme to protect endangered species. Just as "the federal government possesses a historic interest in [wildlife preservation]—an interest that has repeatedly been recognized by the federal courts," 214 F.3d at 501, the federal government possesses no less an entrenched interest in the preservation of human civil rights against acts of racial and religious hatred. *Cf. Mitchum v. Foster,* 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972) (By enacting Section 1983, "Congress clearly conceived that it was altering the relationship between the States and the Nation with respect to the protection of federally created rights; it was concerned that state instrumentalities could not protect those rights."). In essence, Section 245 puts teeth into the enforcement of federal rights guaranteed by the Civil Right Act and recognized by the Supreme Court since its passage as within Congress's constitutional authority. Nothing in *Lopez* or *Morrison* suggests an intention to turn back the clock.

### c. Jurisdictional Element

The government contends that Section 245's requirement that "a defendant acted with the intent to interfere with one of the specifically enumerated federally-protected rights listed in the statute" represents "a distinctively federal limiting factor." Opp., at 12. Defendant argues that Section 245 is constitutionally infirm because it lacks the express jurisdictional language found in the Civil Rights Act of 1964. Reply, at 3 (Civil Rights Act of 1964 only applied to public accommodations whose "operations affect commerce").

While the Supreme Court has approved the use of a jurisdictional element, it has never specifically required such an element, nor has it prescribed the content thereof. *See Morrison,* 120 S.Ct. at 1751 ("[A] jurisdictional element would lend support to the argument that [the contested law] is sufficiently tied to interstate commerce."). Thus, Congress's failure to import the jurisdictional language of the Civil Rights Act into Section 245 is not necessarily fatal.[9]

Section 245's requirement that a defendant have intended to interfere with federally protected rights serves the same function as a jurisdictional element: it distinguishes "what is truly national [from] what is truly local." *Id.* at 1754. Section 245 does not purport to regulate all crime, only violent bias-motivated crime that implicates a federally protected right. The

---

9. The government correctly notes that while the scope of public services covered in Section 245 is broader than the definition of "public accommodations" in Title II of the Civil Rights Act, this has no bearing on the ultimate validity of the statute. If it relates to commercial intercourse which, in the aggregate, could substantially affect interstate commerce, the statute survives constitutional scrutiny. As discussed above, the court concludes that it does.

Supreme Court invalidated the GFSZA because it represented an intrusion into an area "where States historically have been sovereign." *Lopez*, 514 U.S. at 564, 115 S.Ct. 1624 (commenting that by sustaining such a statute, the court would effectively abrogate any limitation on federal power).

The statute at issue here is distinguishable from both the VAWA and the GFSZA because it regulates only offenses that occur within recognized areas of federal concern, such as civil rights. *See Mitchum v. Foster*, 407 U.S. 225, 242, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972) (affirming role of federal courts "as guardians of the people's federal rights"). Section 245 prohibits racially or religiously motivated violence that interferes with a federally protected right, in this case, the right to frequent a place of exhibition or entertainment that serves the public, or to hold federal employment. Far from intruding into a matter of purely local concern, the statute regulates matters that Congress and the courts have recognized as "truly national." *Morrison*, 120 S.Ct. at 1754; *cf. Mitchum*, 407 U.S. at 242, 92 S.Ct. 2151; *Gibbs*, 214 F.3d at 492. As a result, this limiting factor favors a determination that Section 245 is a proper exercise of Congress's Commerce Clause power.

In sum, the challenged portions of Section 245 fall within Congress's power to regulate activities that substantially affect interstate commerce. Because the court finds Section 245 to be a valid exercise of Congress's Commerce Clause power, it does not address the government's Thirteenth Amendment and Necessary and Proper Clause arguments. Opp., at 23–24.

### 2. *18 U.S.C. § 924(c)*

■ The relevant portion of Section 924(c) imposes criminal penalties on any person who, during and in relation to any crime of violence or drug trafficking crime ... for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm....

18 U.S.C. § 924(c)(1)(A).

Defendant analogizes Section 924(c) to the statute at issue in *Lopez*. Opp., at 9. However, the Ninth Circuit has upheld Section 924(c) twice since the *Lopez* decision. *See United States v. Harris*, 108 F.3d 1107 (9th Cir.1997) (rejecting *Lopez* challenge and affirming conviction based on crime of violence prong of section 924(c)); *United States v. Staples*, 85 F.3d 461 (9th Cir.1996) (sustaining drug trafficking prong of statute against *Lopez* challenge).

The *Staples* court offered two grounds for its conclusion that Congress had constitutional authority to enact the drug trafficking component of Section 924(c): 1) drug trafficking is an activity that substantially affects interstate commerce, and 2) unlike the GFSZA, Section 924(c) includes "a jurisdictional element which ensures, 'through case-by-case inquiry, that the firearm possession in question affects interstate commerce.'" 85 F.3d at 463 (citing *Lopez*, 514 U.S. at 561, 115 S.Ct. 1624). *Harris*, relying on *Staples*, rebuffed a Commerce Clause challenge to the crime of violence prong of Section 924(c).

Defendant notes that *Harris*, relying on *Staples*, "contained no analysis of the difference between the drug trafficking prong, an arguably commercial activity affecting commerce, and the crime of violence prong." Mot., at 9 n. 2. As noted above, the *Staples* court presented two alternative grounds for its decision. The second ground, which focused on the statute's jurisdictional language, applies with equal force to the crime of violence prong, as Section 924(c) requires the prosecution to show that a defendant used a firearm during the commission of a crime "for which he may be prosecuted in a court of the United States." By citing to *Staples*, the *Harris* court relied on the fact that Section 924(c) contains an express jurisdictional element, limiting its application to crimes independently proscribed by feder-

al law, thus distinguishing it from the statutes invalidated in *Lopez* and *Morrison.* Thus, while *Staples* involved a different prong of the statute in question, it afforded ample justification for the Ninth Circuit's decision in *Harris.*

Defendant further contends that *Morrison* overrules *Harris.* Mot., at 9 n. 2. As discussed above, the *Morrison* court did not preclude federal regulation of crime altogether, but only intrastate violence with little or no effect on interstate commerce. In *Morrison,* the Supreme Court analogized the VAWA to the GFSZA, commenting that neither statute required that prosecuting authorities establish that the federal remedy fell within Congress's power to regulate interstate commerce. 120 S.Ct. at 1751. The Court affirmed that "such a jurisdictional element would lend support to the argument that [the contested law] is sufficiently tied to interstate commerce." *Id.* As the quoted passage illustrates, Morrison approved of the Ninth Circuit's reasoning in *Staples,* recognizing the limitation of Section 924(c) to federal crimes. Thus, *Morrison* 0 affords no basis for reconsideration of *Harris.*

Defendant's argument that Section 924(c) sets forth "an offense distinct from the underlying felony" is true, but irrelevant to the analysis. Mot., at 9 (citing *Castillo v. United States,* 530 U.S. 120, 120 S.Ct. 2090, 147 L.Ed.2d 94 (2000)). To establish a Section 924(c) violation, the prosecution must nonetheless show that defendant committed an offense "for which he may be prosecuted in a court of the United States." Because Section 924(c) contains an express jurisdictional element, the court concludes that it is a valid exercise of Congress's Commerce Clause authority.

3. *18 U.S.C. § 922(g)*

■ Defendant challenges the constitutionality of Section 922(g), which makes it a crime for a convicted felon to "possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate commerce." In a

post-*Lopez* case, the Ninth Circuit upheld the constitutionality of Section 922(g), noting that "Section 922(g)'s requirement that the firearm have been, at some time, in interstate commerce is sufficient to establish its constitutionality under the Commerce Clause." *United States v. Hanna,* 55 F.3d 1456, 1462 n. 2 (9th Cir.1995); *accord United States v. Williams,* 128 F.3d 1128, 1133 (7th Cir.1997) (noting that every circuit which has addressed the issue has upheld § 922(g)). Defendant urges reconsideration of the Ninth Circuit's decision in *Hanna* in light of *Morrison* and *Jones v. United States,* 529 U.S. 848, 120 S.Ct. 1904, 146 L.Ed.2d 902 (2000). Mot., at 10. Defendant's reliance on *Morrison* and *Jones* is misplaced.

Like *Lopez, Morrison* struck down a statute that lacked a jurisdictional hook. 120 S.Ct. at 1751 ("Like the Gun–Free School Zones Act at issue in Lopez, § 13981 contains no jurisdictional element establishing that the federal cause of action us in pursuance of Congress' power to regulate interstate commerce."). In contrast, Section 922(g) includes language requiring that the gun possession occur "in or affecting commerce." The Ninth Circuit has cited this language as critical to its decisions sustaining the constitutionality of the statute. *See United States v. Polanco,* 93 F.3d 555 (9th Cir.1996) ("This jurisdictional element is a key distinction between § 922(g)(1) and § 922(q), the statute invalidated in Lopez, for it insures, on a case-by-case basis, that a defendant's actions implicate interstate commerce to a constitutionally adequate degree."). Because the law invalidated by *Morrison* lacked an element deemed dispositive in *Hanna* and *Polanco, Morrison* does not disturb the Ninth Circuit decisions upholding Section 922(g) in the face of Commerce Clause challenges. *Cf. United States v. Wesela,* 223 F.3d 656, 660 (7th Cir.2000) ("Nothing in [*Morrison or Jones* ] casts doubt on the validity on sec. 922(g), which is a law that specifically requires a link to interstate commerce.").

*Jones* held that a private, owner-occupied residence did not constitute a "property used in interstate or foreign commerce or any activity affecting interstate or foreign commerce" under the federal arson statute, 18 U.S.C. § 844(i). The Court held that the above language requires "active employment for a commercial purposes, and not merely a passive, passing, or past connection to commerce," and that the government failed to show such use. 120 S.Ct. at 1910.

*Jones* has little relevance here. First, *Jones* considered the constitutionality of a conviction under the federal arson statute, not the federal gun possession statute. Second, *Jones* involved a question of statutory interpretation, not constitutional authority. Third, *Jones* does not change the law in this circuit.

Foreshadowing *Jones*, the Ninth Circuit held in *United States v. Pappadopoulos*, 64 F.3d 522 (9th Cir.1995), that Section 844(i) did not apply to a private home. The *Pappadopoulos* court distinguished *Hanna* on the following basis: "Unlike a firearm ... which can readily move in interstate commerce, a house has a particularly local rather than interstate character." *Id.* at 527–28. Furthermore, the Ninth Circuit affirmed *Hanna* in *United States v. Polanco*, 93 F.3d 555 (9th Cir.1996), a case decided after *Pappadopoulos*. Thus, *Jones* does not alter Ninth Circuit law with respect to the constitutionality of Section 922(g).

**4.** *18 U.S.C. § 922(o)*

■ Defendant attacks the constitutionality of Section 922(o), which imposes criminal penalties on anyone who transfers or possesses a machinegun. Mot., at 10. In *United States v. Rambo*, 74 F.3d 948 (9th

Cir.1996), the Ninth Circuit sustained the constitutionality of Section 922(o) as a regulation of the use of channels of interstate commerce (*Lopez* category one).[10] The court reasoned:

> Section 922(o) prohibits the possession or transfer of machineguns only if they were not lawfully possessed before May 19, 1986. In other words, there can be 'no unlawful possession under section 922(o) without an unlawful transfer.' ... By regulating the market in machineguns, including regulating machinegun possession, Congress has effectively regulated the interstate trafficking in machineguns.

*Id.* at 951–52 (citing *United States v. Kirk*, 70 F.3d 791, 796 (5th Cir.1995)); *cf. United States v. Wilks*, 58 F.3d 1518, 1521 (10th Cir.1995) (Section 922(o) "embodies a proper exercise of Congress' power to regulate 'things in interstate commerce'—i.e., machineguns.").

By contrast, the *Morrison* court determined that the VAWA was an improper exercise of congressional authority to regulate activities that substantially affect interstate commerce. 120 S.Ct. 1750. Because *Morrison* analyzed the VAWA under Lopez category three, it does not undermine the Ninth Circuit's decision in *Rambo*, which declared Section 922(o) constitutional under *Lopez* category one. In sum, *Rambo* is valid, controlling authority that dictates this court's conclusion that Section 922(o) is a constitutional exercise of Congress's Commerce Clause power.

**5.** *26 U.S.C. § 5861*

■ Defendant further claims that Congress exceeded its authority under the Commerce Clause by enacting 26 U.S.C.

**10.** Defendant takes issue with the Ninth Circuit's reasoning in *Rambo*, arguing that Section 922(o) regulates neither the channels nor the instrumentalities of interstate commerce, and "must be sustained, if at all, under the 'substantial relation test.' " Mot., at 10 (citing no authority). Not only is Defendant's position unsupported, it is at odds with binding precedent. Moreover, numerous circuits have upheld Section 922(o) post-*Lopez* as a permissible regulation of activities substantially affecting interstate commerce. *See United States v. Knutson*, 113 F.3d 27, 30–31 (5th Cir.1997); *United States v. Rybar*, 103 F.3d 273, 278–84 (3d Cir.1996), *cert. denied*, 522 U.S. 807, 118 S.Ct. 46, 139 L.Ed.2d 13 (1997); *United States v. Kenney*, 91 F.3d 884, 890–91 (7th Cir.1996).

§ 5861, which prohibits possession of a unregistered firearm. However, the court need not reach this argument, for the Ninth Circuit has twice sustained Section 5861 under the *taxation power: United States v. Giannini,* 455 F.2d 147 (9th Cir. 1972), and *United States v. Tous,* 461 F.2d 656 (9th Cir.1972). In *Giannini,* the court reasoned: "The statute is part of a comprehensive scheme to levy and collect taxes upon activities and transactions involving various kinds of firearms. Section 5861(h) is rationally designed to aid in the collection of taxes imposed by other provisions of the National Firearms Act." 455 F.2d at 148; *see also Tous,* 461 F.2d at 656 ("[26 U.S.C. § 5861] is a valid exercise of the power of Congress to tax."); *accord United States v. Dodge,* 61 F.3d 142 (2d Cir.), *cert. denied,* 516 U.S. 969, 116 S.Ct. 428, 133 L.Ed.2d 343 (1995); *United States v. Hale,* 978 F.2d 1016, 1018 (8th Cir.1992), *cert. denied,* 507 U.S. 997, 113 S.Ct. 1614, 123 L.Ed.2d 174 (1993). Insofar as they rely on Congress's power to tax, *Tous* and *Giannini* are unaffected by recent developments in Commerce Clause jurisprudence. These cases compel the conclusion that Section 5861 is a valid exercise of Congress's taxation power.

## III.   CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss counts of the indictment because the underlying statutes are unconstitutional is *denied.*

IT IS SO ORDERED.