# United States Court of Appeals for the Fifth Circuit

_____

No. 24-10633

_____

United States Court of Appeals
Fifth Circuit

**FILED**

April 30, 2026

Lyle W. Cayce
Clerk

United States of America,

*Plaintiff—Appellee*,

*versus*

Jamaion Wilson,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:24-CR-27-1

_____

## ON PETITION FOR REHEARING EN BANC

Before Wiener, Willett, and Ho, *Circuit Judges*.

Per Curiam:

Treating the petition for rehearing en banc as a petition for panel rehearing (5th Cir. R. 40 I.O.P.), the petition for panel rehearing is DENIED. The petition for rehearing en banc is DENIED because, at the request of one of its members, the court was polled, and a majority did not vote in favor of rehearing (Fed. R. App. P. 40 and 5th Cir. R. 40).

In the en banc poll, seven judges voted in favor of rehearing: Judges Jones, Smith, Graves, Ho, Duncan, Engelhardt, and

No. 24-10633

OLDHAM. Ten voted against rehearing: CHIEF JUDGE ELROD, and JUDGES STEWART, RICHMAN, SOUTHWICK, HAYNES, HIGGINSON, WILLETT, WILSON, DOUGLAS, and RAMIREZ.

No. 24-10633

DON R. WILLETT, *Circuit Judge*, joined by ELROD, *Chief Judge*, and DUNCAN, *Circuit Judge*, respecting the denial of rehearing en banc:

By enumerating both powers and rights, the Framers embraced "a belt-and-suspenders Constitution."[1] They denied Congress the "power to enact a comprehensive criminal code."[2] And, for added security, they hardcoded some liberties—including the "right of the people to keep and bear Arms"[3]—into the Constitution itself.[4] The design was straightforward: if the enumerated-powers belt slipped, the enumerated-rights suspenders would still hold.[5]

Often, they have.[6] But not here. Jamaion Wilson was convicted under 18 U.S.C. § 922(o), and two of our precedents leave little work for either safeguard to do. In *United States v. Knutson*, we let the enumerated-powers belt slip, holding that Congress may ban the mere possession of a machinegun pursuant to its commerce power.[7] And in *Hollis v. Lynch*, we cast aside the Second Amendment suspenders too, holding that machineguns are not just

---

[1] *United States v. Hembree*, 165 F.4th 909, 919 (5th Cir. 2026) (WILLETT, J., concurring).

[2] *United States v. Bonner*, 159 F.4th 338, 340 (5th Cir. 2025) (WILLETT, J., concurring); *see United States v. Morrison*, 529 US. 598, 607 (2000) ("Every law enacted by Congress must be based on one or more of its powers enumerated in the Constitution."); *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 428 (1821) ("It is clear, that Congress cannot punish felonies generally . . . .").

[3] U.S. CONST. amend. II.

[4] *See generally id.* amend. I–VIII. *Cf. id.* amend. IX (prohibiting "constru[ing]" "[t]he enumeration in the Constitution, of certain rights . . . to deny or disparage others retained by the people"); *id.* amend. X ("reserv[ing]" certain "powers not delegated" "to the people").

[5] *Hembree*, 165 F.4th at 920 (WILLETT, J., concurring).

[6] *See id.*

[7] 113 F.3d 27, 30–31 (5th Cir. 1997) (per curiam).

3

"dangerous" but also "unusual"[8]—and thus may be prohibited under our "historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'"[9]

Both holdings are dubious. As I explained in my panel concurrence, "[m]ere possession of a firearm fits uneasily" within the Supreme Court's three recognized categories of commerce regulation, and "the fact that the firearm happens to be a machinegun" does not "make a regulation of simple possession any more compatible" with the Commerce Clause.[10] Likewise, although the Supreme Court has offered only "minimal guidance" for determining whether a weapon is dangerous and unusual,[11] it is hard to see how the millions of machineguns registered with the Bureau of Alcohol, Tobacco, Firearms, and Explosives[12] make them, in any ordinary sense, unusual.[13]

---

[8] 827 F.3d 436, 448–51 (5th Cir. 2016).

[9] *District of Columbia v. Heller*, 554 U.S. 570, 627 (2008) (citation omitted); *see Hollis*, 827 F.3d at 451.

[10] *United States v. Wilson*, 164 F.4th 380, 392 (5th Cir. 2026) (WILLETT, J., concurring); *see Gonzales v. Raich*, 545 U.S. 1, 16–17 (2005) (recognizing that the Supreme Court's modern Commerce Clause cases "have identified three general categories of regulation in which Congress is authorized to engage under its commerce power").

[11] *Harrel v. Raoul*, 144 S. Ct. 2491, 2492 (2024) (statement of THOMAS, J.).

[12] *See* BUREAU OF ALCOHOL, TOBACCO, FIREARMS, AND EXPLOSIVES, DATA & STATISTICS, https://perma.cc/KTN4-3Y9V (last visited Apr. 20, 2026) ("As of June 2025, the total number of machineguns in the [National Firearms Registration and Transfer Record] is approximately 2,382,403.").

[13] *Cf. Harrel*, 144 S. Ct. at 2492 (statement of THOMAS, J.) (observing that AR-15s are protected by the Second Amendment because they have been "selected by millions of Americans for self-defense and other lawful purposes"); *Caetano v. Massachusetts*, 577 U.S. 411, 420 (2016) (ALITO, J., concurring in the judgment) ("The more relevant statistic is that hundreds of thousands of Tasers and stun guns have been sold to private citizens, who it appears may lawfully possess them in 45 states." (cleaned up)).

No. 24-10633

Under our rule of orderliness, however, future panels—including the panel here—remain bound by *Knutson* and *Hollis*.[14] The en banc court does not.[15] So in an appropriate case, I would welcome en banc review to determine whether § 922(o) exceeds constitutional limits—under the Commerce Clause, the Second Amendment, or both.

There is, however, a countervailing danger: in faulting Congress for exceeding its constitutional limits, we must not exceed our own. We do not sit as a "roving commission[] assigned to pass judgment on the validity of the Nation's laws"[16] whenever a provocative question presents itself. We sit instead as a "passive instrument[] of government," charged with deciding the case the parties actually brought.[17] And in my view, two features of this case prevent us from passing on § 922(o)'s constitutionality without exceeding that role.

First, Wilson never argued—either in the district court or before us— that § 922(o) exceeds Congress's enumerated powers. We cannot make that argument for him.[18] To do so would take us beyond adjudicating ("call[ing] balls and strikes") and into advocating (taking our own "turn at bat").[19]

---

[14] *See United States v. Taylor*, 933 F.2d 307, 313 (5th Cir. 1991) ("[I]t is the firm rule of this circuit that one panel may not overrule the decisions of another.").

[15] *See Planned Parenthood of Greater Tex. Fam. Plan. & Preventative Health Servs., Inc. v. Kauffman*, 981 F.3d 347, 369 (5th Cir. 2020) (en banc) ("An opinion of a panel does not bind the en banc court.").

[16] *Broadrick v. Oklahoma*, 413 U.S. 601, 611 (1973).

[17] *United States v. Sineneng-Smith*, 590 U.S. 371, 376 (2020) (citation omitted).

[18] *See Clark v. Sweeney*, 607 U.S. 7, 9 (2025) (per curiam) (summarily reversing the Fourth Circuit for "granting relief on a claim that [the habeas petitioner] never asserted and that the State never had the chance to address").

[19] *Id.* (cleaned up).

5

No. 24-10633

Second, although Wilson labels his claim an as-applied Second Amendment challenge, he argues only that § 922(o) is unconstitutional "as applied to the possession of machineguns." But possession of machineguns is all that § 922(o) regulates. So whatever the label, the claim is facial.[20] And that choice "comes at a cost."[21] Wilson can prevail only if "no set of circumstances exists under which [§ 922(o)] would be valid."[22] That is a demanding standard—and here, likely a fatal one. The statutory definition of "machinegun" sweeps in not just handheld firearms, but also weapons such as the "massive guns mounted on military aircraft and anti-aircraft batteries."[23] If even one such weapon falls outside the Second Amendment's protection—or otherwise lies within Congress's regulatory authority—Wilson's facial challenge fails.

\*　　\*　　\*

The en banc court should, in an appropriate case, consider whether § 922(o) comports with Congress's enumerated powers and the individual right secured by the Second Amendment. But Wilson's appeal is not the right vehicle. It presents no enumerated-powers challenge at all. Nor does it

---

[20] *See Bucklew v. Precythe*, 587 U.S. 119, 138 (2019) ("A facial challenge is really just a claim that the law or policy at issue is unconstitutional in all its applications."); *Wilson*, 164 F.4th at 383 n.7 (majority op.) (explaining that Wilson did not raise a genuine as-applied challenge).

[21] *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024).

[22] *United States v. Rahimi*, 602 U.S. 680, 693 (2024) (citation omitted).

[23] *United States v. Bridges*, 150 F.4th 517, 530 (6th Cir. 2025) (NALBANDIAN, J., concurring in part and concurring in the judgment); *see* 26 U.S.C. § 5845(b) (defining "machinegun" as "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger"); 18 U.S.C. § 921(a)(24) (incorporating § 5845(b)'s definition by reference). *See also United States v. Charles*, 159 F.4th 545, 547–48 (8th Cir. 2025) (rejecting a facial challenge to § 922(o) because it covers weapons systems mounted on warships, military helicopters, and armored military vehicles).

No. 24-10633

present a genuine as-applied Second Amendment challenge. We should save those questions for a case that properly presents them. For now, I concur in the denial of rehearing en banc.[24]

---

[24] One of our learned colleagues suggests that, vehicle problems aside, we should have granted rehearing en banc to "get our court's reasoning back on track by granting rehearing en banc to revisit errant circuit precedent." *Infra*, at 10 (Ho, J., dissenting from the denial of rehearing en banc). I agree with the premise, but not the conclusion. The en banc court may of course revisit old circuit precedent. But the question is not whether we have authority to reconsider *Hollis*. We do. The question is whether *Hollis* is cleanly presented here. It is not.

*Festeryga* does not prove otherwise. That case had a precedent problem; this case has a presentation problem. There, *Weaver* was the obstacle: it required dismissal, and once the en banc court overruled it, relief became available. *See Abraham Watkins Nichols Agosto Aziz & Stogner v. Festeryga*, 109 F.4th 810, 817 (5th Cir. 2024), *on reh'g en banc*, 138 F.4th 252 (5th Cir. 2025) (en banc); *Abraham Watkins Nichols Agosto Aziz & Stogner v. Festeryga*, 155 F.4th 456, 462 (5th Cir. 2025). Here, by contrast, *Hollis* is not what makes Wilson's case a poor vehicle. Take *Hollis* away, and the same defects remain: Wilson raised no enumerated-powers challenge, and his Second Amendment claim is facial in substance rather than genuinely as-applied.

That is the critical distinction. *Hollis* may have bound the panel, but it does not follow that Wilson's case cleanly presents the questions needed to overrule *Hollis*. En banc review should resolve questions the parties have properly presented, not abstract disagreements with precedent. A cited precedent is not the same thing as a properly presented question.

7

No. 24-10633

JAMES C. HO, *Circuit Judge*, dissenting from the denial of rehearing en banc:

"Our analysis of the Second Amendment must be guided by history—not hoplophobia." *United States v. Cockerham*, 162 F.4th 500, 502 (5th Cir. 2025).

I recognize that some citizens associate certain firearms with violent crime—just as some citizens regard speech as violence. *See*, *e.g.*, *Oliver v. Arnold*, 19 F.4th 843, 853 (5th Cir. 2021) (Ho, J., concurring in the denial of rehearing en banc) ("In some quarters . . . [s]peech is violence—not just metaphorically, but 'literally.'") (quoting Lisa Feldman Barrett, *When is Speech Violence?*, N.Y. TIMES (July 14, 2017)); Zach Goldberg et al., *Americans' Troubling Views on Speech, Harm, and Violence*, Florida State University (Nov. 2025) (59% of Americans "think some speech can be as damaging as physical violence").

But other citizens associate firearms with self-defense, not violence—just as other citizens regard free speech as enlightening, not frightening. *See*, *e.g.*, John R. Lott Jr., MORE GUNS, LESS CRIME: UNDERSTANDING CRIME AND GUN CONTROL LAWS (1998). They agree that "[v]iolent criminals should be prosecuted, convicted, disarmed, and incarcerated." *United States v. Kersee*, 86 F.4th 1095, 1100 (5th Cir. 2023) (Ho, J., concurring). But they respect law-abiding citizens—and presume innocence, not violence. *Id.*

And the job of a judge is not to take sides in political controversies, but to enforce the rights guaranteed to every American by our Constitution.

Our Founders were not afraid of firearms. To the contrary, they required all able-bodied men between the ages of 18 and 45 to obtain a firearm. *See* Act of May 8, 1792, 1 Stat. 271.

And they made the conscious and deliberate decision to secure the right to keep and bear arms—not just for themselves, but for posterity, by agreeing to ratify the Constitution, but only on the assurance that such rights would be protected by subsequent amendment. *See*, *e.g.*, Helen E. Veit, Kenneth R. Bowling, and Charlene Bangs Bickford, Creating the Bill of Rights: The Documentary Record from the First Federal Congress xi, 17, 19, 22 (1991).

Consistent with these Founding principles, the Supreme Court has made clear that we must not treat the Second Amendment as "a second-class right." *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 70 (2022) (quotations omitted). Fear isn't supposed to change the First Amendment. *See*, *e.g.*, *Dr. A v. Hochul*, 142 S. Ct. 552, 558 (2021) (Gorsuch, J., dissenting from the denial of application for injunctive relief) ("[I]t is this Court's duty to 'apply the limitations of the Constitution with no fear.'") (quoting *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 641 (1943)). It shouldn't change the Second Amendment, either.

We all agree that the law before us, 18 U.S.C. § 922(o), is consistent with our circuit precedent in *Hollis v. Lynch*, 827 F.3d 436 (5th Cir. 2016). The question is whether *Hollis* is consistent with the Second Amendment and governing Supreme Court precedent. As I've previously noted in this case, "there's good reason for concern that our precedent misapplies the 'dangerous and unusual' test" established by the Supreme Court. *United States v. Wilson*, 164 F.4th 380, 394 (5th Cir. 2026) (Ho, J., dubitante). *See also id.* (citing *Bruen*, 597 U.S. at 47 (weapons which were once "dangerous and unusual" can cease to be so)).

In addition, the law at issue here raises the same federalism concerns that I examined in *United States v. Seekins*, 52 F.4th 988, 988 (5th Cir. 2022) (Ho, J., dissenting from the denial of rehearing en banc).

No. 24-10633

\* \* \*

Although I would have reheard this case en banc, I am grateful for the opinion defending the denial of en banc review.  Two of our dearest colleagues go out of their way to express avowed agreement that our circuit precedent is indeed out of step with the Constitution and Supreme Court precedent and needs to be revisited.  Their concern is simply that this case may not be the right vehicle to do so.  (A third distinguished member of the court joins them in their vehicle concerns, after voting for rehearing en banc.)

So nine members of the court appear to acknowledge difficulties with our circuit precedent.  The only issue is whether this case is the right vehicle.

As I've previously expressed in dissenting from the denial of rehearing en banc in cases like *Voice of the Experienced v. LeBlanc*, 168 F.4th 339 (5th Cir. 2026)—and that our en banc court implicitly embraced in granting rehearing en banc in *Spectrum WT v. Wendler*, 157 F.4th 673 (5th Cir. 2025): Whatever the right result in a particular case, we have the power to get our court's reasoning back on track by granting rehearing en banc to revisit errant circuit precedent.

Our colleagues acknowledge that we have the authority to take this case en banc to revisit *Hollis*.  They express only a prudential concern that *Hollis* may not be "cleanly presented" here.

Prudence can certainly be a virtue.  But I don't see any prudential problems here.  To the contrary, the issue is just as "cleanly presented" here as it was when we granted en banc review in *Abraham Watkins Nichols Agosto Aziz & Stogner v. Festeryga*, 138 F.4th 252 (5th Cir. 2025).

In *Abraham Watkins*, the panel was "bound" by circuit precedent. *See*, *e.g.*, *id.* at 254 ("Bound by *Weaver* . . . a panel of this court 'reluctantly' dismissed Festeryga's appeal.").  So we went en banc to revisit that

10

precedent. *See id.* ("Today, we do what only this court sitting en banc can: we correct course and 'unweave *Weaver*.'").

The exact same thing is true here. Here too the panel was "bound" by circuit precedent. *See*, *e.g.*, *Wilson*, 164 F.4th at 383 ("*Hollis* remains binding precedent"). So we may now go en banc to revisit that precedent as well. If the issue was cleanly presented in *Abraham Watkins*, then it's likewise cleanly presented here.

The concurrence tries to distinguish *Abraham Watkins* by observing that there are additional issues presented here—namely, that Wilson failed to present a "genuinely" as-applied claim.

But additional issues were presented in *Abraham Watkins*, too. Yet that didn't hold us back. To the contrary, we made clear how we would handle those separate issues: "The parties raise additional issues on appeal. But our central task was to correct the flawed *Weaver* precedent—a task only this en banc court could undertake." 138 F.4th at 263.

So we revisited our errant circuit precedent—and then returned the case back to the original panel "to resolve the remaining issues." *Id. See also id.* at 263 (Ho, J., concurring) (praising this approach as "a basic principle of en banc rehearing").

We could have done the exact same thing here. We could have gone en banc to reconsider *Hollis*—and then returned the case back to the original panel to resolve the remaining issues.

At the end of the day, I don't see how we can claim that we're "bound" by a particular precedent at the panel stage—but then claim that we can't go en banc to revisit that precedent in that very same case. If *Hollis* was "binding" at the panel stage, then surely the issue is presented at the en banc stage as well—just as it was in *Abraham Watkins*.

No. 24-10633

\* \* \*

The only way to revisit and reconsider our circuit precedent is rehearing en banc. But the court declines to do so. I respectfully dissent from the denial of rehearing en banc.

By denying rather than granting en banc review, despite our manifest agreement that our precedent contains fatal defects on matters of fundamental import, we are only delaying our court from getting the Constitution right. That's regrettable. Time will tell whether the court will seize the opportunity to get things on a proper footing in a future case.

No. 24-10633

Andrew S. Oldham, *Circuit Judge*, joined by Ho, *Circuit Judge*, dissenting from the denial of rehearing en banc.

Our Court's approach to the Second Amendment is historically bankrupt.

As far as I am aware, there is no historical justification for banning machine guns. To the contrary, repeating arms have existed since the fifteenth century. David B. Kopel & Joseph G.S. Greenlee, *The History of Bans on Types of Arms Before* 1900, 50 J. Legis. 223, 232 (2024) ("The first known repeating firearms were ten-shot matchlock arquebuses that date to between 1490 and 1530."). And numerous different repeating arms existed at the American Founding. *See id.* at 255–57 (collecting examples). Meriwether Lewis famously carried one—the Girardoni air rifle—on the Lewis and Clark Expedition. *See* 2–8 Meriwether Lewis & William Clark, The Journals of the Lewis & Clark Expedition (Gary E. Moulton & Thomas Dunlay eds., Neb. ed. 1986–1993) (2002). And despite the prevalence of repeating arms, literally no jurisdiction banned them: "There were no prohibitions on any particular type of arm, ammunition, or accessory in any English colony that later became an American state. The only restriction in the English colonies involving specific arms was a handgun and knife carry restriction enacted in Quaker-owned East New Jersey in 1686." Kopel & Greenlee, *supra*, at 238.

Our court's approach to categorical bans on classes of weapons cannot be reconciled with Supreme Court precedent. As the Supreme Court held: "Far from banning the carrying of any class of firearms, [laws at the Founding] merely codified the existing common-law offense of bearing arms to terrorize the people[.]" *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 47 (2022). In *Hollis v. Lynch*, 827 F.3d 436 (5th Cir. 2016), however, we held that certain classes of weapons—including repeating

13

arms—fall entirely outside the Second Amendment's scope. We had no historical support for that in 2016.

While distinguished jurists have reached different conclusions about the constitutionality of this statute, *see United States v. Alsenat*, No. 24-14058, 2026 WL 1078057, at *1 (11th Cir. Apr. 21, 2026), our precedent's lack of historical support conflicts with *Bruen*'s requirement that courts focus on history and tradition. So, unless the Supreme Court changes the governing standard, our precedent cannot justify a ban on entire classes of weapons.

Because our court refuses to reconsider *Hollis*, I respectfully dissent.